STATE OF NEBRASKA, APPELLEE, v. RICHARD JAMES ELLEFSON, APPELLANT.

336 N.W.2d 88

Filed July 1, 1983. No. 82-414.

Gregory M. Neuhaus and Leo M. Williams, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

This is an appeal taken from convictions by jury verdict of the defendant, Richard James Ellefson, in the District Court for Knox County, for burglary and first degree sexual assault. For these two offenses the defendant was sentenced to consecutive terms of not less than 5 nor more than 10 years for burglary, and not less than 15 nor more than 25 years for first degree sexual assault, to be served in the Nebraska Penal and Correctional Complex.

On appeal the defendant assigns basically three errors. He claims the admission into evidence of his oral admissions and written confession was improper, due to promises and threats made which in-

duced this confession, and because he received incomplete *Miranda* advice; that the imposition of consecutive sentences was improper under the law; and that the sentences were excessive. As set out in detail below, we find no merit to these assignments and affirm the defendant's convictions and sentences.

A short summary of the relevant facts will aid in the understanding of this decision. In the early morning hours of August 11, 1981, the home of a local housewife was broken into. This woman lives in a rural area of Knox County and was alone in her home. She was attacked by a man while she lay in her bed, and was raped at knife point. Also, $50 in cash was stolen from her purse. During the course of the attack, the victim was able to observe certain characteristics of her attacker, even though the room was dark. She gave a description which fit the defendant.

The attack on the victim lasted about an hour. When her attacker left, she observed a vehicle back out of her lane and drive away. The sheriff was thereafter notified, and she was treated at a nearby hospital.

This matter was investigated by then Deputy Sheriff Dean Wavrunek, who, by his investigation, determined that the person who broke into the victim's home gained entry by cutting a window screen and climbing through the window. This person also left footprints around the house, which roughly matched the boots that the defendant wore. Also, tire tracks which were left in the lane to the house matched those of a truck which the defendant was driving on the night in question.

The defendant had been working on a crew that was repairing waterlines near the victim's home on August 10, 1981. The victim testified that she spoke to members of this crew when she returned to her home early in the evening on August 10, and had seen the defendant then.

At the time of this assault the defendant was on parole from the South Dakota state penitentiary. He had been convicted in 1978 of second degree rape and sentenced to 10 years in prison. The defendant received probation in 1980, and as a condition thereof was not to drink alcoholic beverages. On the evening of August 10, 1981, and at other times prior to that date, the defendant had consumed alcoholic beverages.

On August 11, 1981, defendant was summoned to the police station in Yankton, South Dakota, by his South Dakota parole officer, Russell Craig, to discuss his parole violations, i.e., drinking alcoholic beverages, and to discuss the rape-burglary.

The defendant, who was 34 years of age at the time, arrived at the police station shortly after 10 p.m. on August 11, accompanied by his parents. Deputy Wavrunek, from Knox County, Nebraska, and Russell Craig were there and began questioning the defendant. Initially, the defendant's parents were allowed to sit in during the questioning, but they were asked to leave when the subject of the questioning changed from the defendant's drinking in violation of his parole, which he readily admitted, to the rape-burglary incident.

During the course of the questioning, the defendant initially denied the rape, but he eventually, after about 2½ hours, confessed orally and signed a confession written by Deputy Wavrunek at the defendant's instruction. Prior to the beginning of any questioning, the defendant was fully advised of his fifth and sixth amendment *Miranda* rights and was again so advised prior to Deputy Wavrunek's writing down the confession. The defendant was not again advised of his rights before he signed the statement 55 minutes later. On appeal the defendant claims that he was coerced into making this confession.

We discussed the admissibility of confessions in two recent cases. We stated: ''To be admissible, a statement or confession must be free and voluntary.

It must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'' *State v. Teater*, 209 Neb. 127, 132, 306 N.W.2d 596, 599 (1981).

'' 'The applicable standard to determine the admissibility of statements made by an accused during a custodial interrogation is whether the accused intelligently, knowingly, and voluntarily waived his right to remain silent and his right to have counsel present at that time.' '' *State v. Strickland*, 209 Neb. 133, 138, 306 N.W.2d 600, 603 (1981).

The defendant claims in his brief, and testified at trial, that Craig threatened him with being returned to the South Dakota penitentiary to serve out the remainder of his term for violating his parole because of drinking. The defendant claims that, as an alternative, Wavrunek pointed out that in *State v. Almarez*, a case tried by the District Court of Madison County, Nebraska, the defendant was not sentenced to the penitentiary for murdering her children but, rather, was committed to a state hospital for treatment. See *Almarez v. Hartmann*, 211 Neb. 243, 318 N.W.2d 98 (1982). Wavrunek, defendant claims, stated that such treatment was possible for defendant if he confessed and was convicted for this crime in Nebraska and that Wavrunek had influence and could get him this treatment. The defendant also claims he wished to see an attorney before he signed the confession but was not allowed to do so.

Russell Craig testified that the defendant arrived at the Yankton police station at about 10:30 p.m. on August 11. Craig advised the defendant of why he was summoned and of his fifth and sixth amendment rights. The defendant waived those rights. Craig testified he did tell the defendant that if he was found to be in violation of the conditions of his parole, he could be sent back to the South Dakota penitentiary. Craig testified he told the defendant that if he was tried for a sex offense in Nebraska, he would

be evaluated by a psychiatrist. Craig went on to testify that the defendant was not forced to choose between signing this confession or being returned to the South Dakota penitentiary and that he did not ask to see an attorney before signing the confession.

Deputy Wavrunek testified similarly. He stated he advised the defendant of his rights to counsel and against self-incrimination before the written confession was prepared and that the defendant waived these rights. Wavrunek testified that he wrote out a confession as the defendant dictated to him, that Wavrunek read the statement back to the defendant, and that the defendant signed it thereafter.

While Deputy Wavrunek testified that there was some discussion of the Nebraska sex offender law and possible mental health treatment under that law, he denied having made any mention of the *Almarez* case. At one point on cross-examination, Wavrunek was asked if the option of signing the confession and getting the same treatment as Almarez, that of being placed in a state hospital for 6 months to 1 year, or returning to the South Dakota penitentiary, was put to the defendant, to which Wavrunek responded, "No." Wavrunek also stated the defendant did not ask for an attorney before signing the confession.

There is no evidence in the record, other than the defendant's testimony, showing the defendant was coerced into signing this confession by threats of returning him to the South Dakota penitentiary. There is also no evidence of any promises of treatment in Nebraska, other than defendant's testimony. The State refutes these claims with the testimony of two witnesses.

When a factual conflict develops as to whether custodial statements are admissible, we have stated: "In determining whether the State has shown the admissibility of custodial statements by the requisite degree of proof, this court will accept the factual determination and credibility choices

made by the trial judge unless they are clearly erroneous, and in so doing we will look to the totality of the circumstances." *State v. Teater, supra* at 131, 306 N.W.2d at 598-99. The trial court obviously accepted the State's version of the facts on whether this confession was induced by threats or promises. We cannot say that the court's determination on this point is clearly wrong. As such, we hold that this confession was not induced by threats or promises and therefore was properly admitted at trial.

As to the defendant's claim that he was not properly advised of his *Miranda* rights, we find nothing in the record to support such claim. The defendant was twice advised of his rights during the course of the evening in question, and both times he chose to waive these rights. The only basis for defendant's claim is his own testimony that he asked to see an attorney before signing his confession, which was disputed by two witnesses for the State. The court chose to believe the testimony of the State's witnesses as to the fact of whether an attorney was requested. Such belief cannot be said to be clearly wrong. We find the defendant was properly advised of his constitutional rights in this case.

Defendant also claims his being sentenced to consecutive sentences was improper. As conceded in defendant's brief, the test for determining whether consecutive sentences were improperly imposed is set forth in *State v. Chapple*, 197 Neb. 4, 8, 246 N.W.2d 714, 716-17 (1976): " 'It is well settled that the test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. The test is whether some additional evidence is required to prove one of the offenses than is necessary to prove one of the other offenses.' "

The defendant was charged with and convicted of

two offenses. First, the defendant was charged with and convicted of burglary under Neb. Rev. Stat. § 28-507(1) (Reissue 1979): "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with the intent to commit any felony or with intent to steal property of any value." To convict of such an offense the State must prove the defendant broke and entered the property with the requisite felonious intent.

The second offense was first degree sexual assault under Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1979): "(1) Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threats of force, express or implied, coercion, or deception . . . ." To convict of this offense it must be proven that the actual act of sexual assault was committed, more than simply an intent. Clearly, these two offenses have different elements and require separate proof. Therefore, the trial court could properly impose consecutive sentences for them.

Finally, the defendant argues his sentences are excessive. First degree sexual assault under § 28-319 is a Class II felony, carrying a maximum 50-year, minimum 1-year, sentence. Burglary is a Class III felony, carrying a maximum 20-year sentence or $25,000 fine, or both; minimum 1-year sentence. See Neb. Rev. Stat. § 28-105 (Reissue 1979). The sentences imposed by the trial court are clearly within these statutory guidelines.

As we have said: "In the absence of an abuse of discretion by the trial court we will not disturb on appeal a sentence imposed within the statutory limits." *State v. Parks*, 212 Neb. 635, 643, 324 N.W.2d 673, 679 (1982). No abuse of discretion is evident in this case.

In light of the foregoing, we affirm the convictions and sentences of the defendant imposed by the District Court.

AFFIRMED.