STATE OF NEBRASKA, APPELLEE, V. RICHARD IRISH, APPELLANT.

394 N.W.2d 879

Filed October 10, 1986.   No. 85-640.

Richard L. McCoy, for appellant.

Robert M. Spire, Attorney General, and Calvin D. Hansen, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Richard Irish entered a plea of nolo contendere to second degree forgery. See Neb. Rev. Stat. § 28-603(1) (Reissue 1985). The district court for Dakota County accepted Irish's nolo contendere plea and sentenced him to a 1-year term of imprisonment consecutive to Irish's sentence to imprisonment for his manslaughter conviction which occurred before sentencing on the forgery charge. We affirm.

While Irish was awaiting trial in Dakota County on a charge of manslaughter resulting from a motor vehicle accident, see Neb. Rev. Stat. § 28-305 (Reissue 1985), the State filed an additional information in Dakota County on April 19, 1985, charging Irish with perjury. See Neb. Rev. Stat. § 60-417(8) (Reissue 1984), a Class III felony. In that information the State alleged that Irish, in his sworn application for a Nebraska motor vehicle operator's license, falsely stated that his operator's license or privilege had never been suspended or revoked. A jury found Irish guilty of the manslaughter charge. On May 7 the district court sentenced Irish on the manslaughter conviction to imprisonment for a term from 5 to 10 years.

On July 10 Irish appeared in district court for arraignment on the perjury charge. The court reviewed the "plea agreement" signed by Irish, his lawyer, and the Dakota County attorney, which agreement contained the following:

> 1. Plaintiff will move the Court to amend the charge herein to Forgery in the Second Degree in violation of Section 28-603, a Class I Misdemeanor, alleging that the Defendant did, with intent to deceive, falsely utter a written instrument which purported to be a written instrument which did or might have evidenced a legal

right, on September 21, 1982.

2. Defendant will enter a plea of nolo contendere to the amended charge.

3. There is no agreement as to the sentence Defendant will receive at sentencing following said nolo contendere plea, and Defendant fully understands that the Court could impose any sentence from a minimum of no punishment up to and including a maximum punishment of one year incarceration and a fine of $1,000.00.

On entry of Irish's plea of nolo contendere to the amended charge of second degree forgery but before accepting that plea, the court meticulously reviewed the various rights which would be waived by Irish's plea, such as Irish's right to confront and cross-examine his accusers; subpoena for defense witnesses, if necessary; remain silent and the privilege against self-incrimination; trial by jury; and proof of guilt by evidence beyond a reasonable doubt, as well as the presumption of innocence. The court also elaborated on the nature of the offense charged and the elements which the State must prove beyond a reasonable doubt. The court heard a factual basis for the offense charged. Concerning a possible sentence, the following colloquy occurred involving the court and Irish:

THE COURT: The court understands that the present charge charges a Class I misdemeanor, Mr. Irish, and under the laws of Nebraska the maximum penalty for that offense is one year imprisonment or a thousand dollar fine or both. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

Irish acknowledged he understood all that was said throughout arraignment and during entry of his nolo contendere plea. Further, Irish and his lawyer informed the court that all "rights" attendant to the proceedings had been discussed between them. The State did not indicate or agree to any sentence to be imposed on Irish.

A 1½-hour recess was taken, while Irish reviewed the presentence report which had been prepared for and used in sentencing on May 7 for the manslaughter conviction. Upon resumption of proceedings, Irish declined to make any comment or statement about any sentence which might be

imposed, informing the court: "I think my attorney has covered everything pretty well." After Irish's lawyer expressed his view that the appropriate disposition might be a $25 fine paid by Irish, the county attorney responded: "I would recommend, Your Honor, that this Defendant be punished and that it involve a term of imprisonment. Whatever sentence that this court impose be consecutive in nature to what he is presently serving on his manslaughter conviction." After reviewing the presentence report, the district court entered the judgment that Irish "be incarcerated for a period of one year and that the sentence in this case be consecutive to the sentence you're presently serving in Case No. 40-172 [the manslaughter conviction and sentence in May 1985]."

As his first assignment of error, Irish contends that he had "incompetent counsel." Irish, however, does not specifically show how any alleged incompetency affected his decision to enter a plea of nolo contendere. "To maintain a claim of ineffective assistance of counsel, the record must affirmatively support the defendant's position." *State v. Lieberman*, 222 Neb. 95, 101-02, 382 N.W.2d 330, 335 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Irish's first assignment of error is without merit.

Irish's second assignment of error relates to the consecutive sentence imposed on Irish's nolo contendere plea to the charge of second degree forgery. Specifically, Irish maintains the court abused its discretion in imposing a sentence which ran consecutive to Irish's prior sentence for manslaughter. "It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively, as opposed to concurrently." *State v. Davis*, 200 Neb. 557, 559, 264 N.W.2d 198, 200 (1978). See, also, *State v. Ellefson*, 214 Neb. 747, 336 N.W.2d 88 (1983). The court's sentence was within the maximum range of punishment for a Class I misdemeanor. Under the circumstances of this case, we find no abuse of discretion in the court's decision to impose a consecutive sentence.

Generally, in his third assignment of error, Irish complains that he should have been granted a new trial. However, Irish provides no argument referenced to any particular error justifying a new trial. To be considered by the Supreme Court, errors must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. See, Neb. Ct. R. of Prac. 9D(1)d (rev. 1986); *Fee v. Fee, ante* p. 128, 388 N.W.2d 122 (1986).

For his fourth assignment of error, Irish claims that his nolo contendere plea was not made intelligently and voluntarily because the court failed to inform him that the sentence for the forgery conviction might run consecutive to the sentence of imprisonment for 5 to 10 years imposed as a result of Irish's earlier conviction for manslaughter.

It is true that the ABA Standards Relating to Pleas of Guilty (Approved Draft 1968), and as adopted by the association's House of Delegates on February 12, 1979, ABA Standards for Criminal Justice ch. 14 (2d ed. 1980), provide that a defendant pleading guilty or nolo contendere be advised of the effect which may result from the possible imposition of consecutive sentences. It is further true that in *State v. Turner*, 186 Neb. 424, 426, 183 N.W.2d 763, 765 (1971), this court stated the ABA Standards Relating to Pleas of Guilty "outline what should be the minimum procedure in the taking of such pleas." Through a series of cases, this court has drifted from that statement to language that the court had adopted or embraced some of the standards relating to guilty pleas as reflected by the approved draft of 1968. *State v. Lewis*, 192 Neb. 518, 222 N.W.2d 815 (1974); *State v. Evans*, 194 Neb. 559, 234 N.W.2d 199 (1975); *State v. Kluge*, 198 Neb. 115, 251 N.W.2d 737 (1977); *State v. Clark*, 217 Neb. 417, 350 N.W.2d 521 (1984).

Recognizing, however, that the work of the ABA, although good and useful, nevertheless does not rise to the status of legislative acts or judicial holdings (see *State v. Turner, supra*, Carter, J., concurring), we now specifically disapprove any statements that any form of the ABA Standards for Criminal Justice, including those relating to guilty pleas, has been adopted by this state.

This leaves us with the task of restating what must exist in

order to support a finding that a plea of guilty or nolo contendere was entered freely, intelligently, voluntarily, and understandingly.

In *State v. Turner, supra* at 425-26, 183 N.W.2d at 765, this court held: "Before accepting a guilty plea a judge is expected to sufficiently examine the defendant to determine whether he understands the nature of the charge, the possible penalty, and the effect of his plea."

A decade later, *State v. Tweedy*, 209 Neb. 649, 652, 654-55, 309 N.W.2d 94, 96, 98 (1981), said:

> [W]e are faced with the general question of the applicability of the principles of *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), to misdemeanors. *Boykin* identified the three main constitutional rights waived when a plea of guilty is accepted, i.e., the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. "We cannot presume a waiver of these three important federal rights from a silent record." *Boykin* at 243.
>
> . . . .
>
> We therefore hold that no defendant may be imprisoned for any offense, whether a traffic infraction, misdemeanor, or felony, absent a knowing and intelligent waiver of his rights as provided for by the *Boykin-Turner* rule. That means that such defendants are entitled to be informed of the nature of the charges against them, the right to assistance of counsel, the right to confront witnesses against them, the right to a jury trial where otherwise authorized, and the privilege against self-incrimination. A voluntary and intelligent waiver of these rights must affirmatively appear from the record.

In *Tweedy* we also said at 651, 309 N.W.2d at 96:

> The preferred procedure for ascertaining whether or not a factual basis exists to support a guilty plea is to inquire directly of the defendant. However, an examination of a presentence report containing such facts made before sentencing is an acceptable alternative. *State v. Daniels*, 190 Neb. 602, 211 N.W.2d 127 (1973); *State v. Leger*, 190

Neb. 352, 208 N.W.2d 276 (1973). We have also suggested that by a defendant admitting that he is in fact guilty of the crime charged, he has furnished a factual basis for accepting the plea. *State v. Hyslop*, 189 Neb. 331, 202 N.W.2d 595 (1972).

See, also, *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985), which rules that a factual basis may be determined from inquiry of the defendant or county attorney, or by examination of the presentence investigation.

In *State v. Curnyn*, 202 Neb. 135, 274 N.W.2d 157 (1979), we held a plea could stand notwithstanding the fact that the defendant was not informed during arraignment of the range of penalties, provided the record otherwise established the defendant was aware of the penal consequences of his or her plea. For a recent affirmation of the rule, see *State v. Fischer*, 220 Neb. 664, 371 N.W.2d 316 (1985).

The rule to be distilled from the foregoing holdings, thus, is that in order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly,

1. The court must

a. inform the defendant concerning (1) the nature of the charge; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination; and

b. examine the defendant to determine that he or she understands the foregoing.

2. Additionally, the record must establish that

a. there is a factual basis for the plea; and

b. the defendant knew the range of penalties for the crime with which he or she is charged.

We conclude that the taking of the foregoing steps is sufficient to assure that a plea represents a voluntary and intelligent choice among the alternative courses of action open to a criminal defendant, the ultimate standard by which pleas of guilty or nolo contendere are to be tested. *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971).

We thus reject Irish's claim he should have been told of the

effect of the possible imposition of consecutive sentences. We recognize that in *State v. Curnyn, supra,* we said it is "difficult to conceive how a guilty plea can be voluntary and intelligent unless and until the defendant is informed or is made aware of the possible penalties to which he may be subjected . . . ." *Id.* at 140, 274 N.W.2d at 161. That statement does not mean, however, that the court must explain whether each sentence imposed for each separate crime is to be served concurrently with or consecutively to any other sentence which may be imposed, or which the defendant is already serving, for another crime. Explaining the possible range of penalties for each crime is adequate to enable a defendant to freely, voluntarily, intelligently, and understandingly plead to each crime with which he is charged. See, Fed. R. Crim. P. 11; *United States v. Hamilton,* 568 F.2d 1302 (9th Cir. 1978), *cert. denied* 436 U.S. 944, 98 S. Ct. 2846, 56 L. Ed. 2d 785.

There being no merit to Irish's several assignments of error, the judgment and sentence of the trial court are affirmed.

AFFIRMED.

KRIVOSHA, C.J., participating on briefs.

SHANAHAN, J., dissenting.

Today, without any plausible explanation, this court's majority recoils and departs from the ABA standards, which had been judicially "embraced" for 15 years—hardly a proper parting regarding what had been an obviously meaningful relationship.

The plea of guilty is probably the most frequent method of conviction in all jurisdictions; in some localities 90 percent or more of the criminal cases are disposed of in this way. The assumption underlying these standards is that conviction without trial will and should continue to be the most frequent means for the disposition of criminal cases. This assumption is not based on notions of expediency, but rather on the conclusion that a number of values are served by the disposition of many criminal cases without trial. . . .

Conviction on a plea of guilty or nolo contendere, then, is not merely a matter of administrative convenience. Even if more prosecutors, judges, and defense counsel

were available and trial of all cases were possible, conviction without trial would continue to be a necessary and proper part of the administration of criminal justice. Indeed, the limited use of the trial process for those cases in which the defendant has grounds for contesting the matter of guilt aids in preserving the meaningfulness of the presumption of innocence. The frequency of conviction without trial, therefore, not only permits the achievement of legitimate objectives in cases where pleas of guilty and nolo contendere are entered, but also enhances the quality of justice in other cases as well. Accordingly, the objective of [these] standards is not to bring about a substantial shift from the practice whereby pleas are obtained and accepted. The objective instead is to formulate procedures that will maximize the benefits of conviction without trial and minimize the risks of unfair or inaccurate results.

Introd., ABA Standards for Criminal Justice ch. 14 at 14.4 and 14.5 (2d ed. 1980).

Concerning a guilty or nolo contendere plea, standard 14-1.4 of the ABA standards, *supra*, provides at 14.19:

(a) The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally in open court and determining that the defendant understands:

. . . .

(ii) the maximum possible sentence on the charge, including that possible from consecutive sentences, and the mandatory minimum sentence, if any, on the charge, or of any special circumstances affecting probation or release from incarceration.

The immediate predecessor of standard 14-1.4, that is, standard 1.4 of the ABA Standards Relating to Pleas of Guilty at 25 (Approved Draft 1968), prescribed that a sentencing court advise a defendant "(i) of the maximum possible sentence on the charge, including that possible from consecutive sentences."

In *State v. Lewis*, 192 Neb. 518, 521, 222 N.W.2d 815, 818 (1974), this court observed that the practice of informing or advising a defendant of possible penalties preceded *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971), namely:

"The practice of advising a defendant who is about to enter a plea to a felony of the possible penalties on conviction, although not made mandatory by any statute in this state, *is one of long standing in this jurisdiction and antedates the adoption of the standards in State v. Turner, supra.*"

(Emphasis supplied.)

Nevertheless, certainly since *State v. Turner, supra,* and until now, we had consistently and repeatedly recognized the ABA standards concerning a guilty or nolo contendere plea as the minimum procedure for accepting such valid pleas. See, *State v. Clark,* 217 Neb. 417, 350 N.W.2d 521 (1984); *State v. Hill,* 204 Neb. 743, 285 N.W.2d 229 (1979); *State v. Evans,* 194 Neb. 559, 234 N.W.2d 199 (1975); *State v. Lewis, supra.* As expressed in *State v. Clark, supra* at 421, 350 N.W.2d at 524: "In *Turner* we embraced the ABA Standards Relating to Pleas of Guilty . . ." which prescribed the requisite admonition about possible penalties.

In *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), the U.S. Supreme Court promulgated a standard for determining validity of a guilty plea: "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Duration of incarceration unquestionably goes to the very heart of voluntariness required for a valid waiver of a defendant's right to trial on the charge alleged, as well as the voluntariness of a defendant's waiver of the other rights to be accorded consistent with our enunciations in *State v. Turner, supra,* and *State v. Tweedy,* 209 Neb. 649, 309 N.W.2d 94 (1981). As we expressed in *State v. Curnyn,* 202 Neb. 135, 140, 274 N.W.2d 157, 161 (1979): "It is difficult to conceive how a guilty plea can be voluntary and intelligent unless and until the defendant is informed or is made aware of the possible penalties to which he may be subjected by making such a plea." Cf. *State v. McMahon,* 213 Neb. 897, 899, 331 N.W.2d 818 (1983) ("What we are here faced with is a situation in which the defendant was unaware of the penal consequences of his guilty plea because he had been misinformed by the court, and therefore his plea could hardly be said to have been

voluntary").

It is virtually self-evident that a defendant's decision to plead guilty or nolo contendere to a criminal charge is a grave and personal judgment, which a defendant should not be allowed to enter without full comprehension of possible consequences of conviction by such plea. Whether it be the maximum term of imprisonment authorized by the statute prescribing a penalty for conviction of a crime or whether it be a combination of terms of imprisonment imposed as penalties for convictions of separate crimes, duration of possible imprisonment is an important factor affecting any defendant's intelligent choice between the alternatives confronting a defendant—going to trial or entering a plea of guilty or nolo contendere. Anyone unaware that the term or duration of incarceration acutely affects a defendant's decision regarding a guilty or nolo contendere plea in a criminal case is oblivious to one of the realities in our system for efficient criminal justice.

Apart from adoption of the ABA standards as a prescribed procedure in accepting a guilty or nolo contendere plea, other jurisdictions require a court, in accepting a defendant's plea, to inform a defendant of the penal consequences in the form of a possible consecutive sentence. See, *People v. Flannigan*, 131 Ill. App. 2d 1059, 1065, 267 N.E.2d 739, 744 (1971) (a court must inform a defendant of " 'the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences' "); *State v. Ricks*, 53 Ohio App. 2d 244, 246-47, 372 N.E.2d 1369, 1371 (1977) (a defendant's understanding of the maximum penalty "should include information as to whether defendant is eligible for consecutive or concurrent sentences"); *People v. Verderosa*, 80 A.D.2d 930, 931, 437 N.Y.S.2d 783, 784 (1981) ("the failure of the sentencing court to inform defendant . . . that the law required that a consecutive sentence be imposed requires a reversal of defendant's conviction"); *State v. Collins*, 176 Conn. 7, 10, 404 A.2d 871, 872 (1978) (defendant was not "fully apprised of the consequences of his plea" where he did not know "whether federal and state sentences run concurrently or consecutively"); *State v. Flummer*, 99 Idaho 567, 569, 585 P.2d

1278, 1280 (1978) ("the possibility of [a] sentence being made to run consecutively" is an aspect of " 'consequences of pleading guilty,' " to which the defendant must be informed).

When a defendant has been charged with more than one crime, the manner in which that defendant may have to serve each sentence for each conviction, that is, whether multiple sentences are served concurrently or consecutively, is an obvious consequence of a defendant's plea of guilty or nolo contendere and is necessarily as crucial to a defendant's deliberated decision as is any admonition about the maximum penalty for each charge. See *People v. Flannigan, supra.*

As aftermath of today's holding, this court had embraced, has erased but not replaced a valuable part of a time-tested procedure for basically fair disposition of criminal cases. Consistent with standard 14-1.4 of the ABA standards, the reasonable rule of practicality is: Where a court accepting a plea of guilty or nolo contendere is aware of a defendant's prior conviction and sentence, raising a possibility of consecutive sentences, the court must advise the defendant of a possible consecutive sentence as an aspect of the admonition required regarding the maximum sentence permissible under law. The district court should have admonished or informed Irish accordingly. Failure to so admonish or inform Irish constituted reversible error.

KRIVOSHA, C.J., and WHITE, J., join in this dissent.