STATE OF NEBRASKA, APPELLEE, V. DANIEL J. FULTON, APPELLANT.

438 N.W.2d 788

Filed April 21, 1989. No. 88-786.

Charles F. Fitzke, Scotts Bluff County Public Defender, and Bernard J. Straetker for appellant.

Robert M. Spire, Attorney General, and Marie C. Pawol for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and NORTON, D.J., and RONIN, D.J., Retired.

FAHRNBRUCH, J.

Daniel J. Fulton alleges that the trial court failed to inform him of his constitutional rights at the hearing where the defendant entered a "no contest" plea to a charge of attempted assault in the first degree upon an 18-month-old child Fulton was babysitting.

Fulton also claims that his 2- to 4-year sentence of imprisonment is excessive.

We affirm Fulton's conviction but modify his sentence for reasons hereinafter stated.

At first, Fulton was charged with assaulting the 18-month-old child on February 19, 1987, in Scotts Bluff County, Nebraska. The child received second and third degree burns to her feet, legs, and buttocks from hot water in a

bathtub. A pathologist determined that the child had been held in hot water from 2 to 4 minutes.

Assault in the first degree is a Class III felony and carries a penalty of not less than 1 nor more than 20 years' imprisonment, up to a $25,000 fine, or both. There is a 1-year minimum sentence. Neb. Rev. Stat. §§ 28-308 and 28-105 (Reissue 1985). Pursuant to a plea agreement between the defendant, his court-appointed attorney, and the prosecutor, the Class III felony was reduced to attempted first degree assault, a Class IV felony carrying a penalty of up to 5 years' imprisonment, up to a $10,000 fine, or both. It was to this lesser charge that Fulton entered his plea of "no contest."

Fulton first assigns as error that "[t]he District Court failed to inform the defendant of his constitutional rights." However, in his argument, the defendant claims that his "plea was not voluntary and intelligent and that the Defendant was improperly induced into pleading no contest." Brief for appellant at 4.

In order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly, the court must inform the defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

The record is explicit that the trial judge, in the presence of the defendant's court-appointed counsel, informed Fulton of each of his foregoing rights. The defendant was also advised of the penalties that could be imposed upon the acceptance of his no contest plea. Any contention that he was not given this information before he entered his plea is wholly frivolous.

Fulton also argues that he "was improperly induced into pleading no contest." This argument is made in spite of the fact that when he entered his no contest plea he told the trial judge that no one had threatened him or promised him anything to induce him to enter the plea agreement. The defendant points to nothing in the record to substantiate any claim that he was improperly induced to enter his no contest plea.

Next, Fulton argues that his no contest plea was not voluntarily, intelligently, or understandingly entered. The record and presentence investigation reflect that the defendant at the time of his no contest plea was 26 years old; had gone "through the 12th grade"; had earned a GED; could read, write, and understand the English language; and had a 12th-grade reading ability and a 9th-grade math ability. The defendant placed in the midaverage range on an intelligence test. Before entering his no contest plea, Fulton was tested psychologically. Fulton discussed plea bargaining and the implications of it with a psychologist. The psychologist's report which was before the court at the time of Fulton's no contest plea showed that Fulton understood the nature of the proceedings against him and that he had the capacity to comprehend his own condition in reference to the proceedings and to make and assist in a rational defense.

At the time of the examination, it was found, Fulton was "well oriented in three spheres, converses with ease and clarity, displays an accurate fund of general knowledge, shows a certain amount of sophistication in the operations and reasons for the criminal justice system."

At the time of his no contest plea, Fulton told the trial judge that he understood the plea agreement and that the State had made no agreement in regard to sentencing. He also told the court that he understood each of the following when they were separately explained to him: (1) the possible penalties in the event he entered a plea of no contest; and (2) that in pleading no contest he would be giving up (a) a jury trial, (b) the right to the presumption of innocence and the right to have the State overcome it at trial, (c) the right to confront and cross-examine the State's witnesses, and (d) the right to compulsory attendance of defense witnesses. He also said he understood that if the court was satisfied that there was a factual basis for the charges, the court would find the defendant guilty of the crime with which the defendant was charged. The court explained to Fulton his right against self-incrimination, which the defendant said he understood. When asked if he was "satisfied with the way your counsel has represented your interests in this case and advised you and let you know what's

going on," the defendant answered, "Yes."

Fulton's claim that he did not voluntarily, intelligently, and understandingly enter his no contest plea is not supported by the record and is without merit. The record shows affirmatively that the defendant entered his plea voluntarily, intelligently, and understandingly, as the trial court found.

Having disposed of Fulton's first assignment of error, we now consider his second and last assignment of error that the sentence imposed upon him was excessive.

Fulton was convicted of a Class IV felony, which carries a penalty of up to 5 years' imprisonment, a $10,000 fine, or both. § 28-105. Fulton was sentenced to a term of 2 to 4 years' imprisonment, with credit for time spent incarcerated while awaiting final disposition of his case. Repeatedly, this court has held that a sentence imposed within the limits prescribed by the statutes in question will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Camacho, ante* p. 522, 437 N.W.2d 151 (1989); *State v. Masur*, 230 Neb. 620, 432 N.W.2d 815 (1988).

The defendant argues that his sentence was excessive because his rehabilitative needs as demonstrated by the presentence investigation do not necessitate a lengthy incarceration. Additionally, the defendant argues that the sentence was excessive because it did not take into account Fulton's motivation for the offense and his past history of mental illness. Fulton had previously been admitted to hospitals for his mental illness. In 1984, Fulton's illness was diagnosed as schizophrenia, paranoid and chronic. There were references to these hospitalizations and diagnosis in the presentence report.

Fulton gave several versions as to how the 18-month-old victim was injured. He told a police officer that the child had climbed into the bathtub herself and turned on the hot water. In another version, he said she was inadvertently burned while he was bathing her. In a third version, Fulton said he was aggravated because the child earlier had bitten him and that she would not calm down, and said, "[S]he was always yelling or crying or screaming or something and uh it had given me kind of a headache. Being mad and having a headache do not mix."

The record clearly reflects the district court considered the

presentence investigation and then ordered further testing for 90 days at the Nebraska Penal and Correctional Complex, before sentencing Fulton. The court examined the factors found in Neb. Rev. Stat. § 29-2260 (Cum. Supp. 1988) for probation. Finally, the court considered that this particular crime was committed against a person who was totally defenseless and could not testify.

The court found that this type of assault was a manifestation of serious antisocial problems with Fulton and if he was unable to control his emotions and actions, then he should get some treatment. The court also took into consideration that if committed to the penal complex, Fulton would probably receive ongoing psychological treatment, it being recommended in the 90-day evaluation report. In sentencing Fulton, the trial court clearly considered the defendant's rehabilitative needs and his past mental illness, as well as his motivation, or lack thereof, for committing the offense. The court also found that a prison term was justified by the seriousness of the offense.

In 1982, the defendant was convicted of a third degree sexual assault on an incompetent, which assault was noninjury producing. He was sentenced to 1 year's probation on that charge. A sentence of probation in the present case is not warranted.

Neb. Rev. Stat. § 83-1,105(1) (Reissue 1987) provides that in imposing an indeterminate sentence on a defendant, "the minimum limit fixed by the court shall not be less than the minimum provided by law nor more than one-third of the maximum term . . . ." Fulton was sentenced to an indeterminate term of 2 to 4 years. The minimum imposed on a Class IV felony can be no more than 20 months.

Because Fulton's minimum sentence is not authorized, his sentence is hereby modified to a term of not less than 20 months nor more than 4 years in the custody of the Nebraska Department of Correctional Services. Fulton is to receive credit on said sentence for time served before sentence and up until the mandate is filed in this case.

AFFIRMED AS MODIFIED.