IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROBINSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL C. ROBINSON, APPELLANT.

Filed October 13, 2020.    No. A-20-219.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge, on appeal thereto from the County Court for Douglas County: STEPHANIE S. SHEARER, Judge. Judgment of District Court affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Michael C. Robinson appeals from his plea-based convictions and sentences in the county court for Douglas County for domestic assault in the third degree and damage to property in violation of the Omaha Municipal Code. The county court sentenced him to consecutive terms of 1 year's imprisonment and 6 months' imprisonment, respectively. On appeal, Robinson claims that the county court erred in accepting his plea because it was not made in a knowing, intelligent, understanding, and voluntary manner. Robinson claims that the county court also erred in imposing excessive sentences. Finally, Robinson claims that his trial counsel provided ineffective assistance.

- 1 -

For the reasons that follow, we affirm Robinson's convictions and sentences. We further find that the record is insufficient to consider his claims of ineffective assistance of counsel.

BACKGROUND

On September 26, 2018, Robinson was charged in the county court with two offenses arising out of an incident which occurred on September 23, 2018: domestic assault in the third degree, a Class I misdemeanor, and criminal mischief, a Class I misdemeanor ($1,500-$4,999). The State later filed an amended complaint that amended the criminal mischief charge to damage to property, a violation of the Omaha Municipal Code.

Robinson was arraigned in the county court on September 26, 2018, and his trial was initially set for March 2019. However, 3 days before the initial trial date, Robinson successfully moved to continue the trial to follow up on discovery and a new trial date was set for April 24, 2019. At trial, Robinson's trial counsel orally moved for a continuance. Robinson's counsel stated that he "[j]ust recently had time to go thoroughly through the discovery." Robinson's counsel explained that there was a video that showed another man at the residence where the incident occurred. He wanted to discover who the other man was. He also wanted to review all of the surveillance video of the house where the incident occurred. Finally, he wanted an opportunity to obtain the victim's phone records to impeach her credibility.

The State objected to the motion to continue. The prosecutor noted that eight witnesses were present and ready to testify at trial. The prosecutor contended that the State had provided all discoverable materials that it possessed and that the police reports were provided to Robinson on December 5, 2018. The prosecutor also disclosed that the State had no other information about the man, identified by Robinson's counsel, other than his name, Kevin, which was disclosed in a police report. The State provided all the videos it had on January 4, 2019, to Robinson. Finally, the prosecutor argued that the victim was going to testify, therefore, Robinson could impeach the victim's credibility at that time.

The court agreed with the State, noting that Robinson could impeach the victim on cross-examination and that the defense had never filed a formal discovery motion with the court. The court pointed out that Robinson successfully moved for a continuance in March to follow up on discovery. The court denied the motion to continue. Immediately, Robinson attempted to fire his counsel. The court stated that Robinson had every right to fire his attorney but there would be no continuance of trial. The court then allowed for a short break where Robinson could speak with counsel in private. Twenty minutes later, Robinson reached a plea agreement with the State. Under the plea agreement, Robinson would plead guilty to both of the charged offenses in exchange for the State recommending that a presentence report be prepared. A plea colloquy ensued. The court explained that if he pleaded guilty, he would give up his right to trial and associated trial rights. The court notified him that it may be unlawful for him to possess or purchase a firearm. The court explained that the State's charges were for domestic assault in the third degree, punishable by up to 1 year in jail, a $1,000 fine, or both and damage to property under the Omaha Municipal Code, punishable by up to 6 months in jail, a $500 fine, or both. The court also asked if anyone was forcing or threatening him to enter these guilty pleas. Robinson replied that no force or threats had been made to induce his plea.

The State provided the following factual basis:

The victim in this case, J.A., was house- and dog-sitting for T.C. and P.P. at the address of . . . in Omaha, Douglas County, Nebraska. She was, at that time, in a dating relationship with the defendant in this case, Michael Robinson. They had lived together, they were living together at that time, and were intimate partners at that time . . . [I]n the early morning hours of the 23rd of September, [Robinson] went to the home . . . [and] gained entry into the home after pounding on doors and windows and not being let into the home. He was able to gain access into the home. He went up to the bedroom where the victim and a friend of hers were at. The victim had closed and locked the bedroom door. [Robinson] then kicked open that door, damaging the door, gaining access into the bedroom. The victim, at that point, was in the bathroom, sitting on the closed toilet lid. [Robinson] went into the bathroom, essentially took his hand and smacked her off of the toilet lid, making her fall into the shower door in the bathroom and breaking that. At that point, the victim was already injured and bleeding.

[Robinson] then is seen . . . escorting the male party down the stairs and pointing out to him where he could exit the residence.

The video then shows [Robinson] going back up into the bedroom, at which point the victim would testify that [Robinson] repeatedly slapped, hit, struck her, both with a belt [and] with a fan that had fallen apart. He beat her with that. He used his hands. He used his feet. Multiple blows. All of this, again, was captured on the audio portion of the Nest Cam. [Robinson] can be heard saying things like, "Why? Why? Why?" Saying that she deserved this. At some point, she is saying that she is bleeding all over the place and that she cannot see. He tells her to bleed at home and then is trying to admonish her to get up and to leave the residence. . . .

[T]he video captures this assault, lasting almost an hour. However, [Robinson] does leave the bedroom at least twice, because he is seen coming down -- on the video, he is seen coming down the stairs, seemingly looking around at the doors, and then going back upstairs and continuing the assault. The third time that he comes down, his shirt is covered in blood, which clearly was not there the first two times that he is seen on the camera coming down.

Your Honor, the -- at some point, the victim and [Robinson] leave the residence. The victim would have testified that they, then, went back to the apartment that they shared at . . . also in Omaha, Douglas County, Nebraska, where [Robinson] then put her in the shower for approximately five minutes to wash the blood off of her, and then had her lie down in bed where he had intercourse with her while she'd laid there with her face bloodied and bruised and in considerable pain.

Your Honor, the victim would then testify that, at some point, she and Mr. Robinson had discussions about what they were going to say, both to the homeowners, due to the damage that was done to the home that included, not only the kicked-in door and the broken shower door, but also blood splatter all over the bedroom. There was blood splatter on the ceiling, blood splatter on the doors, blood splatter on the carpet, including some pretty significant stains that could not be cleaned out -- cleaned off. So, they discussed what they

- 3 -

were going to tell both the homeowners; what J.A. was going to tell her employer; and then, ultimately, when they decided to go to get medical attention for her, which happened the next day, they discussed what information they would tell medical personnel there. They came up with a story that they were going to say she had been mugged earlier in the evening, which is completely contradicted by the fact that, when -- on the video, when she is seen coming into the residence, she is not injured, she is not impaired or, seemingly, in pain in any way. There's no notable injuries on her at that time.

Your Honor, the officer at -- who responded to the hospital after being notified by the emergency medical personnel at UNMC, would testify that Mr. Robinson was in the room the entire time that she was talking with J.A., that he was seemingly -- from the corner, seemingly directing her as to what to say and not to say, including shaking his head at her when the officer asked if she wanted to make a report for this -- the story that they had come up with about a mugging that had happened prior to the assault.

Your Honor, at the hospital, the victim was diagnosed with numerous facial fractures, to include two orbital fractures. She had a punctured eardrum. She was dazed and dizzy. She had a large gash on her head. She also had bruising on her body from the different blows that [Robinson] inflicted upon her.

We further note that the factual basis revealed that the homeowners needed to make repairs to items damaged and had to clean up the blood. The estimated cost of repairs was $1,400.

After the factual basis was given, the court accepted Robinson's pleas, found that there was a sufficient factual basis, and found Robinson guilty of both charges. Sentencing was initially scheduled for July 18, 2019. Prior to the close of the plea hearing, the county court ordered Robinson not to travel more than 10 miles outside of the boundaries of Douglas County without permission of the court.

Robinson failed to appear at the July sentencing hearing. Robinson, instead, had absconded to Illinois. Due to his flight and subsequent extradition, sentencing was not held until October 24, 2019. Robinson retained new counsel for purposes of sentencing. Counsel noted that as of that time, Robinson was 42 and had obtained a master's degree. Counsel stated that Robinson had no criminal record other than a DUI charge. Robinson asked for credit for time served of 58 days. Robinson's counsel at sentencing conceded that the nature of Robinson's crimes made imposition of probation impossible in that a sentence to probation would depreciate the seriousness of the offenses and promote disrespect for the law. However, counsel argued that the sentences should be served concurrently rather than consecutively and that a maximum sentence need not be imposed.

The prosecutor argued that Robinson was minimizing his responsibility in the assault when he described the assault as a "bad night" and "not a positive night" in the PSI interview. The State also detailed other portions of the PSI including reports of prior assault incidents between Robinson and J.A. The PSI detailed a prior assault that occurred in 2012, where Robinson hit J.A. in her face and the back of her head. Robinson had an active misdemeanor warrant in Kansas for an incident involving J.A. that occurred in 2014. According to the PSI, Robinson grabbed J.A.'s neck and head, then ripped her earring out of her ear. In her victim impact questionnaire, J.A.

detailed another incident where Robinson tied her hands behind her back and then Robinson repeatedly beat her abdomen. Robinson also referred to himself as a victim in the PSI. The State further argued that Robinson demonstrated dishonesty in his PSI. The State concluded its argument by stating that Robinson's violence was shocking and because Robinson showed no remorse, the court should show no mercy.

The court stated that it reviewed Robinson's PSI and considered all factors that the law requires it to consider when imposing a sentence. The PSI detailed the prior assaults of J.A. Robinson also had two prior driving under the influence convictions. While Robinson scored low on the Simple Screening Instrument for drug and alcohol abuse, he scored in the maximum problem risk range for truthfulness. The PSI also noted that Robinson was minimizing the assault of the victim and his role. The court also reviewed the video and the audio provided by the State.

The court found that the assault was shocking and that any sentence less than the maximum sentences would depreciate the seriousness of these offenses and promote disrespect for the law. The court further explained that because he entered a plea agreement, normally, it would consider giving Robinson a break in length of sentences. But because he failed to appear for sentencing, the court would impose the maximum sentence. The court then stated that the sentences would be served consecutively. Robinson, at this point represented by a third attorney, timely appealed to the district court which affirmed the conviction and sentences. The district court rejected all errors assigned by Robinson in his statement of errors. Robinson now appeals to this court.

## ASSIGNMENTS OF ERROR

Robinson alleges that the county court abused its discretion by denying his motion for continuance on April 24, 2019, and by accepting his plea. He alleges his plea was not entered knowingly, voluntarily, intelligently, and understandingly. Robinson alleges that the county court abused its discretion by rendering an excessive sentence. Robinson also alleges that he received ineffective assistance of counsel when his counsel failed to prepare for trial and when his counsel advised him he could withdraw his plea at a later date.

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, both the district court and a higher appellate court generally review appeals for error appearing on the record. *State v. Stanko*, 304 Neb. 675, 936 N.W.2d 353 (2019). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable; we independently review questions of law. *Id.*

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018). The judicial

discretion of the trial court in its decision to grant or not grant probation should be accorded great weight. *State v. McCurry*, 198 Neb. 673, 254 N.W.2d 698 (1977). The trial court has discretion to impose probation or incarceration and we will uphold the court's decision denying probation absent an abuse of discretion. *State v. Willis*, 285 Neb. 260, 826 N.W.2d 581 (2013).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and the evidence. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

*Denial of Motion for Continuance.*

The district court found that when Robinson pled guilty to the offenses, he waived his right to appeal the denial of his motion to continue. We agree. Once a voluntary plea of guilty has been entered, the defendant may not obtain relief from a later imposed sentence, where relief is sought on the basis of alleged errors at the trial. *State v. Edwards*, 236 Neb. 445, 462 N.W.2d 93 (1990). The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991). The only exceptions are for the defense of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id.* See, also, *State v. Manjikian, supra*.

On the day of trial, Robinson moved for a continuance to have more time to review the evidence. This motion was denied by the court. After a short break, Robinson pleaded guilty. On appeal, Robinson asserts that the court erred in denying his motion to continue. He waived this assignment of error when he entered his guilty plea.

*Acceptance of Plea.*

Robinson argues in his brief on appeal that his plea was not entered knowingly, intelligently, voluntarily, and understandingly because he was not informed that the sentences could be run consecutively to one another. However, it has long been the law of this state that the court is not required to explain that sentences imposed for each separate crime can be ordered to be served consecutively to any other sentence. *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). It is generally sufficient for the trial court to explain the possible range of penalties for each crime rather than explaining that each sentence may run concurrently or consecutively. *Id.*

Here, the county court explained the possible range of sentences that could be imposed on Robinson at his initial arraignment and then again at the time he entered his plea. Prior to accepting Robinson's pleas, the county court ascertained whether Robinson understood the possible penalties

that could be imposed on each charge. Robinson affirmed his understanding. Therefore, on this record, we agree with the district court that the county court did not err in accepting his plea.

*Excessive Sentences.*

Robinson argues in his brief on appeal that the court abused its discretion when it sentenced Robinson to the maximum sentences on both counts and ordered them to run consecutively to one another. He now argues that instead of sentencing Robinson to incarceration on the damage to property charge, he should have received probation.

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). When a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id.*

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993). The court, in passing judgment of either probation or sentence to a penal institution, must determine whether the proposed disposition of the case would depreciate the seriousness of the crime; if the court determines that it would, then a sentence of probation would not be appropriate. *State v. Rice*, 198 Neb. 758, 255 N.W.2d 282 (1977).

In his brief on appeal, Robinson argues that the property damage was only incidental to the commission of the assault and as such he should have received probation for the charge of damage to the property. In reviewing the factors to be considered and the appropriate weight given to the sentencing court, we do not find that the sentencing court abused its discretion.

Robinson's sentences were within the statutory limits. Robinson was convicted of third degree domestic assault, a Class I misdemeanor. Neb. Rev. Stat. § 28-323(4) (Reissue 2016). A Class I misdemeanor is punishable by up to 1 year's imprisonment, a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 2016). The county court sentenced Robinson to 1 year's incarceration for this crime, within the statutory limits.

Robinson was also convicted of damage to property in violation of the Omaha Municipal Code. We will not take judicial notice of an ordinance not in the record. *City of Beatrice v. Meints*, 20 Neb. App. 776, 830 N.W.2d 524 (2013). If the ordinance is not properly before us, we assume that a valid ordinance creating the offense charged exists, that the evidence sustains the findings of the trial court, and that the sentence is within the limits set by the ordinance. *Id.* It is the responsibility of the appellant to include the ordinance in the record which is transmitted to the appellate court. *State v. Bush*, 254 Neb. 260, 576 N.W.2d 177 (1998). In an assignment of error that the evidence is insufficient to support a criminal conviction of a municipal ordinance or that the sentence imposed upon such conviction is excessive, we will only take judicial notice of a municipal ordinance if the ordinance creating the offense and specifying the penalties for violation

is included in the certified transcript prepared by the clerk of the county court. *Id.* Robinson failed to offer the ordinance at the trial court level nor did he seek to have the ordinance made part of the record upon appeal to the district court and this court. The court noted that the maximum penalty for this crime was up to 6 months in jail, $500 fine, or both. The court sentenced Robinson to 6 months' imprisonment. Because we do not have the municipal ordinance and the court sentenced Robinson to 6 months, we assume that Robinson's sentence is within the limits set by the ordinance noted by the court prior to sentencing.

We find that the county court considered all factors that it was required by law to consider. The court found that any lesser sentence than jail time would depreciate the seriousness of these offenses and promote disrespect for the law. Robinson was 41 years old when he assaulted the victim. The amount of violence involved in the commission of the crime was staggering. The property damage was not incidental, but rather, intertwined with the assault of the victim. When Robinson gained access to the house where the victim was, he kicked open a bedroom door. He hit the victim making her fall into the shower door and breaking the shower door. He then repeatedly slapped, hit, struck her, both with a belt and with a fan stand that had fallen apart causing blood to splatter on the walls, the ceiling, and the floors. Carpets had to be replaced. The wall and ceiling needed to be cleaned to remove the blood. In addition, after entering his plea, the court advised Robinson not to go 10 miles outside of the boundaries of Douglas County without permission of the court. Instead, Robinson absconded from the state. At sentencing, Robinson's counsel acknowledged that these crimes were not the type of crimes where Robinson could receive probation. Rather, counsel asked only that the sentences be run concurrently and not consecutively.

The court reviewed the PSI to review Robinson's history. Robinson had an active warrant stemming from an incident in Kansas where he grabbed J.A.'s head and neck and ripped the earring from J.A.'s ear. In another incident, Robinson hit J.A. multiple times with his fists. There was an additional incident where he tied J.A.'s hands and then proceeded to hit J.A. in her abdomen, severely bruising her. The court considered Robinson's statement in the PSI that this was a bad night and determined that it was more than just a bad night. Ultimately, the court determined that any other sentence would depreciate the seriousness of the crime.

We find no abuse of discretion by the court in applying all of the relevant factors in sentencing Robinson to the sentences imposed and requiring that the sentences be served consecutively. The offense conduct in this case was egregious and part of an extended pattern of abuse perpetrated by Robinson on the victim. While the sentences imposed were at the maximum limits of the sentencing range, they did not constitute an abuse of discretion.

*Ineffective Assistance of Counsel.*

Where, as here, a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.* See, also, *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

Within the plea context, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). However, allegations of how the defendant was prejudiced by trial counsel's allegedly deficient conduct are unnecessary to the specific determination of whether a claim of ineffective assistance of counsel can be determined based on the record on direct appeal. *State v. Mendez-Osorio, supra*.

Robinson raises two specific allegations that his trial counsel was ineffective: (1) failing to prepare for trial and (2) advising him to plead guilty and then advising him he could withdraw his plea at a later date.

First, Robinson alleges that his trial counsel was ineffective because counsel failed to prepare for trial. Robinson argues that his counsel was unprepared for trial and Robinson was put in a position to proceed to trial with incompetent counsel, represent himself, or take a plea offer that amounted to pleading as charged. He further argues had he been represented by competent counsel, he would have had documents to impeach the victim and a witness.

We agree with the district court that the record is insufficient to reach this claim on direct appeal. During his argument for a motion for continuance, Robinson's counsel explained that he had just thoroughly reviewed the discovery with Robinson. He wanted additional time to follow up on discovery, to subpoena phone records, and locate the other man on the video. He also was requesting additional videos through the surveillance camera of the homeowners. While the record does reveal several items that trial counsel wanted to accomplish, it does not reveal what he had accomplished and whether he would have been capable of proceeding based on the preparation that had been done. When the court denied the motion, Robinson attempted to fire defense counsel. Immediately following this exchange, the court asked for a short break where Robinson could speak to defense counsel in private. During these 20 minutes, an agreement was reached between Robinson and the State. When returning on the record, defense counsel stated that an agreement had been reached and Robinson did not want to drag the victim through a trial on that day. Robinson agreed to plead guilty to both counts. There was no record as to the communication between Robinson and counsel during this break. From this record, we cannot tell whether trial counsel was prepared to proceed to trial. We do not know the content of any conversations during the break that may have affected Robinson's decision to accept a plea agreement. There is not sufficient evidence as to trial counsel's preparation or lack thereof, on the record to consider this claim.

Second, Robinson alleges that his trial counsel was ineffective because his counsel advised him to plead guilty but then indicated he could withdraw his plea at a later date. The State again

contends that there is not a sufficient record to reach this claim. We agree. Our record is devoid of any evidence relating to Robinson's allegation. We, therefore, find that the record is insufficient for us to consider this claim.

CONCLUSION

We find that Robinson waived any alleged error regarding the denial of his motion to continue trial by pleading guilty to the offenses charged. We agree with the district court that the county court did not abuse its discretion in accepting the pleas without having advised Robinson of whether he could be sentenced to consecutive terms of incarceration. We find no abuse of discretion in the sentences imposed. Upon our review, we do not consider Robinson's contentions that trial counsel provided ineffective assistance based on the insufficiency of the record.

AFFIRMED.