STATE OF NEBRASKA, APPELLEE,
v. CORY J. FOCHTMAN, APPELLANT.
584 N.W. 2d 468

Filed August 25, 1998.    Nos. A-97-1056, A-97-1057.

Thomas L. Spinar, Saline County Public Defender, and Holly J. Parsley for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

This opinion covers two related appeals by the appellant, Cory J. Fochtman. Pursuant to a plea bargain, Fochtman pled guilty and was convicted of unlawful distribution of marijuana, a Class III felony, and attempted possession of amphetamine, a Class I misdemeanor. The court sentenced Fochtman to not less than 3 nor more than 3 years 50 days' imprisonment on the felony conviction (with credit for 49 days served) and 8 months in jail on the misdemeanor conviction, to be served concurrently. Fochtman now appeals on the basis that the State violated that part of the plea agreement in which the county attorney agreed to "make no recommendation at the time of the sentence." On the basis of plain error, we reverse the convictions and sentences because Fochtman was not adequately advised of his privilege against self-incrimination before the court accepted his plea and remand the cause for further proceedings.

## SUMMARY OF RECORD

The record in this case may be summarized as follows: In case No. 97-2, which composes the appeal in case No. A-97-1056, Fochtman was charged, in an information filed January 9, 1997, with two counts of unlawful distribution of methamphetamine, a Class III felony, one occurring on July 30, 1996, and the second on November 25. Under the plea agreement, this information was later amended to charge Fochtman only with attempted possession of amphetamine, a Class I misdemeanor. In case No. 97-11, which composes the appeal in case No. A-97-1057, Fochtman was charged, in an information filed on January 29, 1997, with unlawful distribution of mari-

juana, a Class III felony, on July 17, 1996. Under the plea bargain, Fochtman pled guilty to this charge.

On February 3, 1997, Fochtman was arraigned on the original informations in both cases. The informations were separately read to Fochtman, and the court advised him as to the pleas available to him, but not of any rights. Fochtman pled not guilty to all charges.

On May 5, 1997, Fochtman appeared with counsel before the court in both cases. A plea bargain was announced to the court which in substance provided that Fochtman agreed to plead guilty in case No. 97-11 to the charge of distribution of marijuana and plead guilty in case No. 97-2 to the amended charge of attempted possession of amphetamine, a Class I misdemeanor. In exchange, the remaining charges would be dismissed and the State would make no recommendation at the time of sentencing.

Subsequently, the court read the amended information in case No. 97-2 to Fochtman, advised him of the pleas available to him, and then asked him how he wanted to plead. Fochtman stated that he wished to plead guilty to the charges. The court then repeated the process with the remaining charge in case No. 97-11. Again, Fochtman pled guilty. The court then promptly called Fochtman as a witness on behalf of the court, had him duly sworn, and then proceeded to examine him about his date of birth, education level, reading and writing ability, and occupation. The court also inquired as to Fochtman's medical and psychological treatment and the possibility that either drugs, alcohol, or mental condition might prohibit him from understanding the proceedings being conducted.

The court then proceeded to inquire if Fochtman understood the procedure that would be followed and specifically questioned Fochtman as to some of the procedures which implement the rights which judges are required to advise defendants of when they plead guilty, as guaranteed by *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), and *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The inquiry was in detail, and Fochtman answered that he understood that 40 or 50 persons would be called at random from those who vote and have driver's licenses to be a jury; that before the trial he or his

attorney could ask the jurors questions to attempt to ascertain if they could be fair; and that "once the trial began, you understand that you could sit by your lawyer or counsel and not help the prosecutor find that you were guilty beyond a reasonable doubt, *you could decline to testify*, you understand that?" (Emphasis supplied.) Fochtman was also asked if he understood that if the county attorney put witnesses on the stand, his lawyer could ask them questions, and that he had the right to force people to come to testify on his behalf.

The judge elicited from Fochtman that he was satisfied with his attorney, that no threats were made other than the charges filed, and that he understood he could go to jail for up to 21 years and be fined $25,000. The judge next inquired whether Fochtman understood that the plea bargain had the effect of reducing one of the felony charges to a misdemeanor charge. The judge also elicited from Fochtman that no one had promised that he would not go to the penitentiary.

The judge then had the county attorney state the evidence which would constitute a factual basis for the charges, and the county attorney did so in detail. The court then inquired of Fochtman if he understood that the State would have to prove every element of every charge beyond a reasonable doubt. Next, the court stated: "And if I send you to the penitentiary there will be little or nothing you can do about it because you're giving up most of your constitutional rights by entering this plea, you understand that?" Fochtman responded in the affirmative. When asked whether, "[t]aking into consideration all those things, [you are] sure that you want to enter this plea of guilty to the misdemeanor and to the Class III felony, 20 years worth, of delivering marijuana?" Fochtman replied, "Yes, sir." Thus, the hearing was concluded.

Fochtman was sentenced at a later hearing, at which time, undisputedly, the county attorney breached the terms of the plea bargain. Fochtman now appeals.

## ASSIGNMENTS OF ERROR
Fochtman argues that he was denied effective assistance of counsel in the "trial proceedings" in that his trial counsel failed to object to the State's violation of the plea bargain at the time

of the violation as required by *State v. Shepherd*, 235 Neb. 426, 455 N.W.2d 566 (1990), and further that the court imposed an excessive sentence. Since we reverse upon the basis of plain error, the assigned errors are rendered moot and need not be considered.

## STANDARD OF REVIEW

Appellate review is limited to those errors specifically assigned as error in an appeal to a higher appellate court. *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997). However, an appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. *Id.* Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## ANALYSIS

In order to support a finding that a plea of guilty or nolo contendere has been voluntarily and intelligently made, before accepting such plea, the court must inform the defendant of the defendant's rights as stated in *State v. Irish*, 223 Neb. 814, 820, 394 N.W.2d 879, 883 (1986):

1. The court must

a. inform the defendant concerning (1) the nature of the charge; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination; and

b. examine the defendant to determine that he or she understands the foregoing.

2. Additionally, the record must establish that

a. there is a factual basis for the plea; and

b. the defendant knew the range of penalties for the crime with which he or she is charged.

Accord *State v. Hays, supra.*

We observe that the above admonition is not simply to ascertain if the defendant knows the procedure but first to inform the defendant of the rights specified and then to determine if the defendant understands the rights and that by pleading guilty, the defendant is waiving those rights (with the excep-

tion of the right to assistance of counsel, see *id*). A voluntary and intelligent waiver of the above rights must affirmatively appear from the face of the record. *Id.* It is plain error for a trial judge to accept a criminal defendant's guilty plea without an affirmative showing that it was intelligent and voluntary, and a conviction must be set aside if it is the result of an invalid plea. *Id.*

In the instant case, it is clear that the judge did not inform Fochtman of his privilege against self-incrimination, nor did he even ask Fochtman if he knew he had such a right. We observe that before the court advised Fochtman of anything but the charges against him and the pleas available to him, the court called Fochtman to the witness stand, put him under oath, and began to ask him questions. We can think of no method more calculated to lead a defendant to believe that he or she does not have the right to remain silent. After this procedure, the judge's phrase "you could decline to testify," interspersed between questions about trial procedure and burden of proof, is essentially meaningless and certainly contradictory. Aside from the fact that it is, as set forth below, insufficient to inform a defendant of his or her right to remain silent, the court's act in calling and swearing a defendant in order to advise the defendant of his or her *Irish* rights is, to say the least, highly unusual and a practice we cannot condone. When a defendant who has not yet been advised of his or her rights indicates a willingness to plead guilty, it is basic that the court inform the defendant of his or her rights. Placing a defendant under oath to do so, however, is useless and confusing.

The right of a defendant to remain silent in a criminal prosecution consists of more than a right to decline to testify. The right has been summarized as follows:

> The right to remain silent, that is, the privilege against self-incrimination guaranteed by the 5th and 14th amendments to the U.S. Constitution and article I, § 12, of the Nebraska Constitution, prevents the State's compelling a defendant to testify in his or her own prosecution on a criminal charge and prohibits an individual's compulsory answer to an official question in any proceeding, civil or criminal, formal or informal, when the answer might

incriminate the individual in a future criminal proceeding. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S. Ct. 316, 38 L. Ed. 274 (1973).

*State v. Sites*, 231 Neb. 624, 625-26, 437 N.W.2d 166, 168 (1989).

■ While such a detailed explanation of the right is not necessary in taking a plea, merely informing a defendant that he or she could decline to testify, after he or she has already been sworn, is clearly insufficient. At a bare minimum, the defendant must be informed that he or she has a constitutional right to not be compelled to testify. The judge's failure to advise Fochtman of his privilege against self-incrimination constitutes plain error. See *State v. Litzenburg*, 220 Neb. 807, 374 N.W.2d 1 (1985).

We further note that the judge did not ask Fochtman whether he understood that by pleading guilty, he was waiving his rights to confront witnesses, his right to a jury trial, and his privilege against self-incrimination. The judge did inform Fochtman, "And if I send you to the penitentiary there will be little or nothing you can do about it because you're giving up most of your constitutional rights by entering this plea, you understand that?" However, the judge did not specify which constitutional rights would be waived. As such, it is likely that such failure also constitutes plain error. See *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997).

Additionally, we highlight the fact that the judge did not inform Fochtman of his *Irish* rights or ask Fochtman if he understood that he had those rights, so much as he asked Fochtman whether he understood the upcoming procedure. See *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). In our experience, defendants have a propensity to agree with a proposition suggested by a judge's question, and therefore a clear distinction exists between informing defendants of their rights and asking them if they understand their rights or that they could do something at trial. Of course, in order to ascertain whether a defendant is voluntarily and intelligently waiving his or her rights, the court must ask the defendant if he or she understands those rights, but the process is supposed to be a two-step process. First, defendants are to be informed of their rights, and

then the record must demonstrate that they understand them to the extent necessary to support a finding that those rights are being waived knowingly and intelligently.

## CONCLUSION

Having found plain error, we must now reverse the judgment, vacate Fochtman's convictions and sentences, and remand the cause to the district court for further proceedings with the direction that Fochtman be rearraigned on the original charges.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.