STATE OF NEBRASKA, APPELLEE, V.
ROBBIE L. NICHOLS, APPELLANT.
600 N.W. 2d 484

Filed August 31, 1999.   No. A-99-041.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Don Stenberg, Attorney General, and Amber Fae Herrick for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

PER CURIAM.

In the appeal of Robbie L. Nichols, the Attorney General has filed a "Suggestion of Remand," which we now resolve. The record contains obvious error by the county court for Dawson County which went uncorrected by the Honorable John P. Murphy of the Dawson County District Court. Judge Murphy announced during his review of the county court conviction: "I don't care what they [the Nebraska Court of Appeals] say."

## FACTUAL BACKGROUND

Nichols was charged in the Dawson County Court with leaving the scene of an injury accident in violation of Neb. Rev. Stat. § 60-697 (Reissue 1998). When he first appeared in court, the

county court conducted a "mass arraignment," where all defendants present were advised simultaneously of their constitutional rights. The bill of exceptions recites that Nichols was present, and he answered affirmatively when the county court judge asked if he understood "the complaint and penalty and Constitutional Rights." Nichols then indicated he would hire counsel, and some 6 weeks later, he appeared again before the Dawson County Court.

At this later appearance, a plea agreement was briefly discussed with counsel whereby Nichols would plead no contest. The county court asked only three questions of Nichols: (1) whether he understood that a no contest plea was the same as a guilty plea except for civil liabilities, (2) whether anyone had threatened him or done anything to get him to enter the plea, and (3) if he understood that "there's no trial if the court accepts your plea." The county court then asked the county attorney to provide a factual basis concerning the crime, which was done. There was no further discussion of what constitutional rights Nichols was surrendering if he entered a no contest plea. And, the record shows that Nichols never actually entered a plea. Nonetheless, the county court said it would accept the nonexistent plea, and a presentence investigation was ordered. Nichols was thereafter sentenced to 6 months in the county jail.

Nichols perfected his appeal to the Dawson County District Court, and in a statement of errors, he alleged that his plea had not been knowingly, intelligently, or voluntarily made. When the matter was orally argued before Judge Murphy, Nichols' counsel cited the case of *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997). Counsel argued that under *Hays*, the record must affirmatively show that the defendant understands that by pleading guilty he is waiving the right to confront witnesses against him, his right to a jury trial, and his privilege against self-incrimination. Counsel then continued: "The Nebraska Supreme Court has said that's error unless he specifically waives that issue in this appeal or statement of errors. But the case I gave the Court, which was a 1998 case of the Court of Appeals . . . ." At this point, the district court interrupted counsel and stated, "I don't care what they say." That ended counsel's presentation. The district court took the matter under advisement, and on

December 22, 1998, filed an order in which it stated, "The Court, upon a review of the record, cannot find any error in the record committed by the Dawson County Court." Nichols then appealed to this court.

## SUGGESTION OF REMAND

After Nichols' brief was filed, the Attorney General's office filed a "Suggestion of Remand." This pleading concedes that the record does not show that Nichols entered a plea of any kind. The State also concedes that the record does not affirmatively show that Nichols understood he was waiving his right to confront witnesses or his privilege against self-incrimination, "as required by *State v. Fochtman*, 7 Neb. App. 532, 584 N.W.2d 468 (1998), *State v. Belmarez*, 254 Neb. 467, 577 N.W.2d 264 (1998), *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997), and *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986)." The State suggests that the "most expeditious means by which to resolve the issues in this appeal is to remand this matter to the County Court of Dawson County for the purpose of further proceedings consistent with the above noted authority."

## DISCUSSION

There is no question that Nichols' appeal has merit, and the State's suggestion that we immediately remand the matter is well taken. Nichols never entered any plea. Moreover, the Dawson County Court did not ensure that Nichols understood that a plea would surrender his constitutional protections, a procedure required by well-established authority, including *State v. Hays, supra*, and *State v. Fochtman*, 7 Neb. App. 532, 584 N.W.2d 468 (1998), *petition for further review overruled* 255 Neb. xxix. That authority requires not only that the defendant enter a plea, but that when he does so, the record affirmatively establishes an intelligent and voluntary waiver of certain constitutional rights.

In *State v. Hays, supra*, it was held that it is plain error for a trial judge to accept a criminal defendant's guilty or no contest plea without an affirmative showing that it was intelligent and voluntary. In other words, a guilty plea is valid only if the record affirmatively shows that the defendant understands

that by pleading guilty he waives his right to confront witnesses against him, his right to a jury trial, and his privilege against self-incrimination, or otherwise affirmatively shows an express waiver of said rights. A no contest plea is the equivalent of a guilty plea. *State v. Kitt*, 232 Neb. 237, 440 N.W.2d 234 (1989).

In this court's decision in *State v. Fochtman, supra*, released August 25, 1998, we emphasized the difference between advising a defendant of his rights as required by *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), and determining whether that same defendant understands that those rights are waived by pleading guilty. Of direct application here, relying on *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997), we found that the trial court erred by failing to ascertain that Fochtman understood that by pleading guilty he was waiving his right to confront witnesses, his right to a jury trial, and his privilege against self-incrimination.

The plea-taking procedure used by the Dawson County Court was obviously flawed. The finding of the district court that "upon a review of the record [it could not] find any error in the record committed by the Dawson County Court" suggests if the district court examined the record, it did not do so in light of *State v. Hays, supra*, cited to the court by defense counsel, or *State v. Fochtman, supra*, which is the authority we presume counsel was trying to bring to the court's attention before the court proclaimed that "I don't care what they [the Court of Appeals] say." We now address this comment.

A hierarchical system of courts allows for as much certainty and predictability as possible in our legal system because lawyers, litigants, and judges all understand that trial courts follow the precedents of the appellate courts. The belief of Judge Murphy that he is somehow exempt from the precedential rulings of this court is simply wrong. Moreover, that belief has a tendency to generate unnecessary appeals which waste our time as well as the taxpayers' money. Because of the obvious inadequacy of the Dawson County Court's proceedings, it was the district court's clear responsibility to reverse the decision and remand the matter for further proceedings. That result would be obvious upon a perfunctory review of the nine pages of the bill

of exceptions from the county court. Even the Attorney General concedes that the trial court proceedings were flawed.

We write neither to assert nor claim superior intellect or wisdom than Judge Murphy, but to emphasize that the office and commission of the Court of Appeals is higher than that which he holds. Thus, while Judge Murphy is entitled to his personal opinion about this court and its members, he is not, under his oath of office, entitled to ignore this court's precedential decisions. Neb. Ct. R. of Prac. 2E(5), which was adopted by the Nebraska Supreme Court on April 30, 1997, requires the judge to follow our permanently published opinions until they are modified or overruled by the Supreme Court. *State v. Fochtman*, 7 Neb. App. 532, 584 N.W.2d 468 (1998), was such an opinion, as it was designated "for permanent publication," making it immediately precedential and properly citable by counsel. The law of this state, via rule 2E(4) and (5), is that trial courts cannot ignore the permanently published opinions of this court, and it is proper for counsel to cite such opinions. The comment at issue suggests unwarranted self-elevation of the district court judge above the appellate courts. The judge's expressed intention to ignore this court's precedential decisions is brazenly incorrect. The comment appears to embrace the "rule of man" rather than the rule of law; however, the most fundamental underpinning of our judicial system is the law, not the personal beliefs of the men and women who are privileged to serve as judges.

We write to try to ensure that citizens, litigants, and lawyers in Judge Murphy's district will have a system of vertical stare decisis upon which they can depend. Vertical stare decisis compels inferior courts to follow strictly the decisions rendered by courts of higher rank within the same judicial system. See *Metro Renovation v. State*, 249 Neb. 337, 543 N.W.2d 715 (1996) (Connolly, J., concurring in the result) (citing *State v. Menzies*, 889 P.2d 393 (Utah 1994), and *Barstow v. State*, 742 S.W.2d 495 (Tex. App. 1987)). Rule 2E(5) obviously overrules and replaces the four-judge holding of *Metro Renovation v. State*, which questioned the applicability of vertical stare decisis to this court. Rule 2E(5) adopts vertical stare decisis for this court's precedential opinions to bring efficiency and order to the Nebraska judicial system. Had that doctrine been respected

here, the county court's decision would have been perfunctorily reversed by the district court, and this unnecessary appeal would not be before us.

## CONCLUSION

This matter is remanded to the district court for Dawson County with directions that it reverse the county court's decision, vacate the so-called plea of no contest, and remand the matter to such court for further proceedings.

REVERSED AND REMANDED WITH DIRECTIONS.