ROSEMARY POGGE AND PHILIP H. POGGE, APPELLANTS, V.
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, A MEMBER
OF THE AMERICAN FAMILY INSURANCE GROUP, APPELLEE.
688 N.W.2d 634

Filed November 9, 2004.   No. A-03-470.

Joseph C. Byam, of Byam & Hoarty, for appellants.

Eugene L. Hillman and Patricia McCormack, of Hillman, Forman, Nelsen, Childers & McCormack, for appellee.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for amicus curiae Nebraska Association of Trial Attorneys.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

American Family Mutual Insurance Company (American Family) filed a motion to dismiss the declaratory judgment action brought by Rosemary Pogge and Philip H. Pogge. The Pogges filed the action, after their settlement with the insurers for the

other two parties involved in a motor vehicle accident, in order to determine the extent of underinsured motorist coverage available to them under their "Family Car Policy" issued by American Family. The trial court sustained the motion to dismiss, and the Pogges appeal. We also deal with issues raised by the Nebraska Rules of Pleading in Civil Actions.

## FACTUAL BACKGROUND

As there were no evidentiary proceedings, our statement of facts comes from the pleadings. On January 15, 1999, Lois Sisson's vehicle entered the intersection of 114th and Jackson Streets in Omaha, Nebraska, and collided with Nathan Mandell's vehicle. At the time of that collision, the vehicle Rosemary was driving was stopped at a stop sign at the intersection of 114th Street and Meadow Drive. The impact of the collision of Sisson's and Mandell's vehicles caused Mandell's vehicle to spin in a northwesterly direction and strike Rosemary's vehicle. Rosemary sustained significant bodily injuries.

At the time of the collision, Sisson's vehicle was covered by a $100,000 liability insurance policy issued by Safeco Insurance. Safeco Insurance tendered its $100,000 policy limits to the Pogges. Mandell's automobile insurance carrier, State Farm Insurance Company (State Farm), ultimately offered to settle with the Pogges for $75,000 of Mandell's policy limit of $100,000. The Pogges notified American Family of their intent to settle the claim for $175,000 ($100,000 from Sisson's insurer and $75,000 from Mandell's insurer). American Family did not object to such settlement, but it informed the Pogges that their underinsured motorist coverage of $100,000 "would not be available to the Pogges for this claim in that they are agreeing to settle their claim for less than the full policy limits of all underlying liability policies available for this accident." The Pogges made demand on American Family for the underinsured motorist benefits under the policy because their damages allegedly exceeded the $175,000 settlement. American Family refused such demand, and the instant litigation followed.

## PROCEDURAL BACKGROUND

The Pogges filed a petition on January 14, 2003, asking the district court to determine the coverage available to the Pogges

under their Family Car Policy issued by American Family and alleging that American Family breached its duty of good faith and fair dealing in failing to pay the underinsured motorist benefits. On February 18, American Family filed a motion to dismiss pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003). Following a hearing on the motion, the district court entered an order on April 1 sustaining the motion to dismiss. The Pogges appeal, but only with respect to the dismissal of their underinsured benefits claim. The breach of good faith claim is not at issue in this appeal.

## ASSIGNMENTS OF ERROR

The Pogges assert that the district court erred in (1) failing to overrule American Family's motion to dismiss and find the language of the exhaustion clause to be ambiguous, (2) failing to overrule American Family's motion to dismiss and find the exhaustion clause void as against public policy, (3) not finding the exhaustion clause contrary to Nebraska's Uninsured and Underinsured Motorist Insurance Coverage Act, (4) not finding the exhaustion clause void and unenforceable because it was not a permissible exclusion or exception under the act, and (5) failing to overrule American Family's motion to dismiss and allow the Pogges to pursue their underinsured motorist claim for the difference between the $75,000 settlement and the $100,000 limit of Mandell's policy.

## STANDARD OF REVIEW

Because this action was filed on January 14, 2003, we must apply the new rules for notice pleading, which apply to all "civil actions filed on or after January 1, 2003." Neb. Ct. R. of Pldg. in Civ. Actions 1 (rev. 2003). In determining the standard of review in the instant appeal, we look to the federal courts for guidance, because the Nebraska appellate courts have not yet set forth a standard of review for a motion to dismiss filed pursuant to notice pleading under rule 12(b)(6), failure to state a claim upon which relief can be granted. The federal rule is that an appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. *Gordon v. Hansen*, 168 F.3d 1109 (8th Cir. 1999). A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts that would demonstrate an entitlement to relief. *Id.* When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Id.* We apply these principles to this case.

## ANALYSIS

■ Where coverage is denied, the burden of proving coverage under an insurance policy is upon the insured. *Farm Bureau Ins. Co. v. Martinsen*, 265 Neb. 770, 659 N.W.2d 823 (2003). Thus, the Pogges had the burden to show that they were entitled to underinsured motorist benefits despite their settlement for less than the limit of Mandell's policy.

■ An insurance policy is a contract. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003). When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Id.*

■ Under Nebraska law, a court interpreting a contract, such as an insurance policy, must first determine, as a matter of law, whether the contract is ambiguous. *Id.* A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Id.* The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Id.*

The seminal Nebraska case to begin our analysis is *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998), where the Nebraska Supreme Court addressed whether an exhaustion clause in a Union Insurance Company (Union) underinsured motorist policy was ambiguous and against public policy. Arlyn Ploen was a passenger in his father's car when it was "rear-ended" by a car driven by Karen Keller, who had a liability policy limit of $100,000. Ploen settled with Keller's insurer for $54,000, although he claimed damages of at least $250,000. Ploen had

underinsured motorist coverage in the amount of $25,000 under his father's Union policy, plus Ploen had $100,000 of underinsured motorist coverage from his own policy with Shelter Mutual Insurance Company (Shelter). Before Ploen settled with Keller, he requested that Union and Shelter agree to the settlement, which they declined to do on the ground that Ploen should not settle for less than Keller's policy limit if his damages were indeed $250,000. Ploen settled with Keller anyway and then brought a declaratory judgment action against Union and Shelter. The Supreme Court found that the Shelter policy did not have an exhaustion clause. Therefore, the focus in *Ploen* was on the exhaustion clause in the Union policy, which provided: " 'We will pay under [underinsured motorist] coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.' " 253 Neb. at 875, 573 N.W.2d at 442. The *Ploen* court held that this exhaustion clause was "plain and unambiguous, should be enforced according to its terms, and is not contrary to public policy." *Id.* at 877, 573 N.W.2d at 443. See, also, *Snyder v. EMCASCO Ins. Co.*, 259 Neb. 621, 611 N.W.2d 409 (2000).

Additionally, the Supreme Court reviewed the underinsured motorist coverage at issue in *Ploen*, including the exhaustion clause, under the Uninsured and Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. § 44-6401 et seq. (Cum. Supp. 1996 & Supp. 1997), and found that the coverage was "consistent with the requirements of the act" and "not contrary to the law." 253 Neb. at 876, 573 N.W.2d at 443. Although Ploen sought payment only for the difference between the policy limit and his damages, the Supreme Court found no coverage under the Union policy and affirmed the summary judgment granted in favor of Union.

Although the exhaustion clause in *Ploen*, 253 Neb. at 875, 573 N.W.2d at 442, stated " 'any *applicable* bodily injury liability bonds or policies' " (emphasis supplied) and here the American Family clause merely says "any **bodily injury** liability bonds or policies," we find that in order for the American Family policy to make sense, "applicable" must be an implied modifier to "any . . . bonds or policies." Obviously, the policy or policies to be exhausted must have a relationship to the accident in question, the exact nature of which relationship we discuss later. This

notion is completely consistent with American Family's reading of its own policy as expressed in the letter of its senior claim attorney to counsel for the Pogges, which letter referenced "all underlying liability policies available for this accident." Thus, we find that the language "any . . . policies" necessarily means any applicable or available policies.

While the Pogges argue that we should overrule *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998), we must instead follow the precedent of the Supreme Court laid down therein. "Vertical stare decisis compels inferior courts to follow strictly the decisions rendered by courts of higher rank within the same judicial system." *State v. Nichols*, 8 Neb. App. 654, 658, 600 N.W.2d 484, 487 (1999). Thus, we necessarily reject the Pogges' argument that we overrule the *Ploen* decision. Nonetheless, we see several significant differences between *Ploen* and the instant case. In *Ploen*, Keller was the sole tort-feasor and it was only her negligence that was a proximate cause of the injury. On the other hand, in the instant case, Sisson was clearly a negligent party, but whether Mandell was guilty of negligence which proximately caused Rosemary's injury is an open question, which leads to the related and key issue of whether Mandell's liability coverage is a "policy" which must be exhausted. Moreover, the language of the exhaustion clause in *Ploen* was deemed unambiguous, but that language was different than the policy language before us in this case.

The underinsured motorist coverage clause under which American Family denied coverage in the instant case states: "**We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.**" In its briefing to this court, American Family asserts generally that this clause excludes coverage when the insured settles a personal injury claim for an amount less than the policy limits. But, as stated earlier, American Family's position expressed in the letter of its senior claim attorney to the Pogges' counsel is that coverage is excluded when the settlement is less than "the full policy limits of all *underlying liability policies available* for this accident." (Emphasis supplied.) The quoted language establishes what is probably obvious—the reference in the exhaustion clause is not to just "any" policy, but, rather, it necessarily refers to

liability policies which are applicable or available to provide coverage for the incident in question. Thus, remembering the factual distinctions we delineated above between this case and *Ploen*, the following question is naturally posed: If Mandell was totally free from negligence in the accident, would Mandell's State Farm policy still be an underlying available policy which would allow American Family to avoid any underinsured motorist obligation because only $75,000 of the $100,000 limit of Mandell's State Farm coverage was obtained in settlement? The interrelated question is whether the mere fact of payment, and acceptance, of $75,000 of the State Farm coverage makes Mandell's policy "available," thereby requiring that its liability coverage be exhausted before the Pogges can access their American Family underinsured motorist coverage.

We answer the last question first. Because the $75,000 paid in settlement by Mandell's insurer cannot be used as an admission of liability or negligence, the fact of such payment, by itself, does not mean Mandell's policy is "available" and thus must be exhausted. See *Baker v. Blue Ridge Ins. Co.*, 215 Neb. 111, 337 N.W.2d 411 (1983) (evidence of negotiations and compromise or settlement of claim is inadmissible). Thus, the mere fact of payment of $75,000 by State Farm on Mandell's behalf is inadmissible on the question of whether he was guilty of negligence proximately causing injury to Rosemary.

We turn to the effect of the new standard of review. In our view, our new pleading rules change the emphasis from what specific facts were pleaded, as was the case in assessing demurrers, to whether there is a set of facts which could be proved which would allow recovery, as discussed in the "Standard of Review" section of this opinion. This change is occasioned by the "notice" nature of our new rules, which include the caution that "[n]o technical forms of pleadings or motions are required." See Neb. Ct. R. of Pldg. in Civ. Actions 8(e)(1) (rev. 2003). Rule 8 also provides in pertinent part:

> **(a) Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a caption, (2) a short and plain statement of the claim showing that the

pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Therefore, given the new nature of pleading and the standard for assessment of a motion to dismiss, the question seems to be whether we can "conjure" up a set of facts which could be proved which would allow the Pogges to get at their own underinsured motorist coverage with American Family. In our view, the answer is in the affirmative. If Sisson ran the stop sign on 114th Street and Mandell was not guilty of any negligence which was a proximate cause of the collision between Mandell and Sisson, then Mandell would not be guilty of negligence which proximately caused any damage to the Pogges. In such instance, Mandell's policy would be "inapplicable" to the Pogges' damages and would not have to be exhausted before the American Family underinsured motorist coverage was available to the Pogges. Accordingly, the trial court erred in dismissing the action, because it did not consider whether there was a set of facts which could be proved which would make Mandell's policy inapplicable and, therefore, a policy which did not have to be exhausted. In this regard, we hold that Mandell's policy is not an applicable policy merely because State Farm paid part of its coverage into the settlement; rather, if the policy is applicable or available and must be exhausted, it is because Mandell was guilty of negligence which proximately caused injury to Rosemary. However, from the facts of the accident as pleaded, there is a readily imaginable set of facts—Mandell's absence of negligence proximately causing injury—which would make Mandell's policy inapplicable.

We are bound by the conclusions reached in *Ploen v. Union Ins. Co.,* 253 Neb. 867, 573 N.W.2d 436 (1998). The practical effect of the *Ploen* court's approval of exhaustion clauses, both from a public policy standpoint and as being in accord with Nebraska statutory law on underinsured motorist coverage, is that the Pogges are forced into the usually undesirable position of having to proceed to trial against Mandell to either secure 100 percent of the coverage provided by Mandell's policy, thereby satisfying the exhaustion clause, or secure an adjudication that Mandell was not guilty of any negligence which proximately injured Rosemary. The former result would satisfy the exhaustion

clause. The latter result would make Mandell's policy "inapplicable," and as a result, no exhaustion of Mandell's policy's limits would be required. Thus, in an accident where there may be more than one tort-feasor, as in this case, the exhaustion clause seems to force a trial against an "iffy" tort-feasor to get an adjudication, which is binding on the underinsured motorist carrier, either that the coverage is inapplicable and therefore need not be exhausted or that it is applicable and is exhausted by the judgment exceeding the policy limits.

The problems associated with upholding exhaustion clauses and applying them in a way which forces parties to trial in cases which could be resolved in another manner were highlighted in the dissent in *Ploen, supra*, a 4 to 3 decision. The majority in *Ploen* also acknowledges that public policy questions are inherent in these issues but suggests that they are best addressed by the Legislature. We respectfully suggest that the instant case reveals a more complicated situation than *Ploen*, which complexities make reexamination of these policy questions more compelling than as outlined by the *Ploen* dissent. Nonetheless, *Ploen* remains binding precedent, and it resolves the public policy questions raised in this appeal against the Pogges.

However, under the standard for reviewing a motion to dismiss filed pursuant to rule 12(b)(6), the trial court erred when it dismissed the case, because there is a set of facts, which if proved, would make Mandell's State Farm policy inapplicable and therefore not subject to exhaustion. As a result, we reverse the decision of the trial court and remand the cause with direction to overrule the motion to dismiss.

REVERSED AND REMANDED WITH DIRECTION.