MELISSA SANFORD, APPELLANT AND CROSS-APPELLEE, V.
CLEAR CHANNEL BROADCASTING, INC., LINCOLN,
APPELLEE AND CROSS-APPELLANT.
719 N.W.2d 312

Filed July 25, 2006.   No. A-04-940.

Laura A. Lowe, P.C., for appellant.

James L. Haszard, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and CARLSON and CASSEL, Judges.

INBODY, Chief Judge.

## INTRODUCTION

Melissa Sanford appeals the decision of the district court for Lancaster County entering judgment in favor of Clear Channel Broadcasting, Inc. (Clear Channel), with regard to the commissions allegedly due her pursuant to the Nebraska Wage Payment and Collection Act. Clear Channel has cross-appealed, claiming, inter alia, that the district court erred in finding that Clear Channel's policy requiring an employee to be employed at the time an advertisement is run in order to be paid a commission is invalid because it violated the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 through 48-1232 (Reissue 2004).

## STATEMENT OF FACTS

On September 13, 1999, Sanford began employment with AM/FM as an account executive, selling radio advertising. Clear Channel purchased AM/FM sometime thereafter, and Sanford then worked as an account executive for Clear Channel, selling radio advertising for Clear Channel's cluster of radio stations in Lincoln, Nebraska. Sanford was compensated by Clear Channel

on a 100-percent commission basis for all advertising that she sold. Clear Channel's policy is that a salesperson is not paid a commission on advertising sold unless that person is an employee of the station at the time the advertising airs.

On January 30, 2002, Sanford's employment was terminated by Clear Channel. After Sanford's termination, she was not paid commissions for advertisements which she had sold prior to her termination but which aired after her termination, based on Clear Channel's policy of not paying a salesperson the commission on advertising sold unless that person is an employee of the station at the time the advertising airs. On August 30, Sanford filed a petition seeking judgment against Clear Channel for commissions allegedly due her, pursuant to the Nebraska Wage Payment and Collection Act, for advertising which aired after she was terminated. A trial to the court was held on April 19, 2004.

Sanford testified that as an account executive with Clear Channel, her job involved developing a relationship with current and potential clients by analyzing the advertising needs of their businesses and then by offering advertising solutions which would meet those needs. Sanford would do this by interviewing clients, developing proposals, presenting proposals to the client, and then, hopefully, securing advertising orders. If Sanford did secure an advertising order, she would write up specific orders which included all the pertinent information, such as the client's name, the advertisement to be run, the dates and times that the advertisements were to run, the amount the client was to be charged, the rate the client was to be charged, and the particular radio station to be utilized. Once an order is approved by the sales manager, it is forwarded to Clear Channel's traffic department. A confirmation is then printed and returned to the sales executive, who confirms that the information is correct. Sanford testified that even after an order had been placed, additions or subtractions could be made, and that a customer could, with no penalty, change an order at any time before an advertisement was aired.

Sanford testified that the weekly sales analyzer report is a document that tracks projected revenues for all of an account executive's clients into the future for the next 6 months. According to Sanford, the sales analyzer report is used to know how much

money is on the books for each month, to keep track of the orders that have been turned in, and to make sure the account amounts match the paperwork from the original order.

According to Sanford, there are two types of clients—local/direct and agency. Local/direct clients are face-to-face local clients, for which she was paid an 18-percent commission. For local/direct clients, Sanford would find out what the client wanted in a commercial and she would turn in a production sheet for the commercial, or she might turn in "copy points," which are details the client needs to have in the commercial. The sales production team would then be responsible for writing and creating the commercial. Once a client has approved a script for a commercial, the commercial is produced and the final product is presented to the client.

Agency clients are local advertising agency accounts where the business hired an advertising agency and then the advertising agency placed advertisements for the clients. Sanford received a 12-percent commission on agency accounts. In agency accounts, the advertising agency would produce the commercials and provide them to the radio station.

The director of sales for Clear Channel testified that she had previously worked as a sales manager for Clear Channel. The director testified that the sales analyzer reports are generated by the traffic department of the radio station for the purpose of reserving time for the anticipated advertising.

The business manager for Clear Channel testified that the business office does not book orders for advertising as revenue or as an account receivable until the advertisement is aired. Further, the sales analyzer reports are not used for computing commissions or for billing, and the projections shown in the sales analyzer reports change. The business manager also testified that a salesperson is not paid the commission for an order until that client's advertisement is aired. Further, if the station runs the wrong advertisement or runs the advertisement in the wrong rotation or at the wrong time, the client's bill is adjusted downward, the salesperson is penalized for the mistake, and the salesperson's commission is reduced. Additionally, a salesperson's commission would be reduced if a customer did not pay for the advertising that aired.

The general manager of the Clear Channel stations in Lincoln testified that it is general policy within the radio industry in Nebraska that salespersons do not get paid until advertisements are aired.

Among the exhibits offered and received into evidence were exhibits 4 and 40, which Sanford offered as evidence of her damages. Exhibit 4 is a sales analyzer report which shows projected advertising as of January 24, 2002, for future months through June 2002. Exhibit 40 is Sanford's computation of her commissions for February through December 2002, which exhibit was admitted for the limited purpose of being a summary of Sanford's testimony.

Also admitted into evidence was exhibit 41, which is a memorandum to "All Lincoln AM/FM Salespeople." It was signed by Sanford on January 13, 2000, indicating that she had read and understood the memorandum. The memorandum states:

> To reiterate the policy that is currently in effect, at the time you leave the station(s), whether voluntarily or involuntarily, you will be paid commissions on all advertising which airs on or prior to the final day of employment at the station (assuming you are on straight commission). You will not be paid commission on any advertising airing after your final day of employment with the station(s).
>
> You will receive a final paycheck within fifteen (15) days of your departure date reflecting the total commission due, less any advance draw a salesperson may have received. Management will withhold any commissions from your final paycheck to cover any uncollectible and questionable accounts. The final decision lies solely with the sales manager as to whether or not the amount should be withheld. Once this money is paid to the station (within a reasonable amount of time determined by you and your sales manager) you will then receive back the commissions you were paid originally. We encourage you to help collect this amount during and up to the next 90 days following your last day at the station. Past that time, and/or if the account has been turned over to a collection agency, all commissions will be forfeited.

Additionally, orders and change orders for Sanford's accounts were admitted into evidence as exhibits.

On July 16, 2004, the district court entered an order finding that Clear Channel's policy of not paying a salesperson the commission on advertising sold unless that person is an employee of the station at the time the advertising airs, even though said policy is common within the industry, is in violation of the Nebraska Wage Payment and Collection Act. The district court found that "there is an order on file when the client approves an ad for production or, in the case of an agency client, when the agency begins to send ads to the station for broadcast. Until then, there is just a reservation of air time." The court further found that at the time of her termination, Sanford had orders on file with all but three of her clients. However, because Sanford failed to present evidence sufficient to allow the court to determine her damages without engaging in speculation, the court entered judgment for Clear Channel. Sanford timely appealed to this court, and Clear Channel has cross-appealed.

## ASSIGNMENTS OF ERROR

On appeal, Sanford contends that the district court erred in entering judgment in favor of Clear Channel with regard to the commissions due her. Specifically, Sanford contends that the court erred in finding that she failed to meet her burden of proof regarding her damages in that based on the evidence before the court, the amount of commissions due could not be determined without engaging in speculation. Sanford also contends that the court erred in finding that she did not have orders on file with three certain clients on the date of her termination.

Clear Channel has cross-appealed, contending that the trial court erred in finding that its policy requiring an employee to be employed at the time an advertisement is run in order to be paid a commission is invalid because it violates the Nebraska Wage Payment and Collection Act. Clear Channel also assigns that the district court erred in determining that an order is "on file."

## STANDARD OF REVIEW

In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the

weight to be given their testimony. *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 702 N.W.2d 792 (2005).

■ Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997); *Roseland v. Strategic Staff Mgmt., ante* p. 434, 708 N.W.2d 841 (2006).

## ANALYSIS

*Clear Channel's Cross-Appeal.*

The initial issue that must be addressed in this case, an issue raised in Clear Channel's cross-appeal, is whether the district court erred in its determination that Clear Channel's policy requiring an employee to be employed with the station at the time an advertisement is run in order to be paid a commission is invalid because it violates the Nebraska Wage Payment and Collection Act. Clear Channel also contends that the district court erred in determining that an order is "on file" when there is a reservation of air time and a client has approved an advertisement for production, or upon an advertising agency's sending an advertisement to the radio station for broadcast.

"Wages" is defined under the Nebraska Wage Payment and Collection Act as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." § 48-1229(4). "Wages includes commissions on all orders delivered and all orders on file with the employer at the time of termination of employment less any orders returned or canceled at the time suit is filed." *Id.*

■ In *Moore v. Eggers Consulting Co., supra*, the Nebraska Supreme Court held that an employment agreement that defines wages contrary to the Nebraska Wage Payment and Collection Act's statutory definition of wages is void. This is because a company cannot circumvent the statutory definition of wages through its employment agreement. *Moore v. Eggers Consulting Co., supra.* Contra *Roseland v. Strategic Staff Mgmt., supra* (language contained in employee handbook is controlling as to employee's entitlement to wages upon termination or resignation).

In *Moore*, the Nebraska Supreme Court held that the Nebraska Wage Payment and Collection Act was violated by the following provisions of the company's employment agreement:

"Employee shall be entitled only to those commissions which are due and payable on the final day of employment. A commission is due and payable upon collection of the fee from the client. No commission shall be paid to the Employee until such time as the client pays the commission and the Candidate begins employment. In the event of termination for any reason, the Employee shall not be entitled to any bonus, award, prize, or other incentive payment which may be payable at any time after termination."

252 Neb. at 405, 562 N.W.2d at 541.

The Nebraska Supreme Court noted that the Nebraska Wage Payment and Collection Act "clearly states that wages include commissions on all orders on file with the employer at the time of termination. In contrast, the [company's] employment agreement states that employees receive commissions only after such time as the client pays the commission and the candidate begins employment." *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 405-06, 562 N.W.2d 534, 541 (1997). The court held that the company "cannot circumvent the statutory definition of wages through its employment agreement. If an act is prohibited by statute, an agreement in violation of the statute is void." 252 Neb. at 406, 562 N.W.2d at 542.

Clear Channel's policy requiring an employee to be employed with the station at the time an advertisement is run in order to be paid a commission, even though said policy is common within the industry, clearly conflicts with the definition of wages found in § 48-1229(4), which provides that "wages" includes orders on file with the employer at the time of termination of employment. Clear Channel's policy is void because it is prohibited by the Nebraska Wage Payment and Collection Act. Therefore, pursuant to § 48-1229(4), the commissions resulting from orders on file with Clear Channel as of the final day of Sanford's employment are due her, provided said orders had not been canceled at the time the lawsuit was filed.

Further, we reject Clear Channel's claim that the district court erred in its determination that an order is "on file" when

there is a reservation of air time and a client has approved an advertisement for production, or upon an advertising agency's sending an advertisement to the radio station for broadcast. Essentially, Clear Channel claims that holding radio stations to this standard is inequitable, and thus, Clear Channel requests that the holding of *Moore v. Eggers Consulting Co., supra*, be modified. " 'Vertical stare decisis compels inferior courts to follow strictly the decisions rendered by courts of higher rank within the same judicial system.' " *Pogge v. American Fam. Mut. Ins. Co.*, 13 Neb. App. 63, 69, 688 N.W.2d 634, 639 (2004) (quoting *State v. Nichols*, 8 Neb. App. 654, 600 N.W.2d 484 (1999)). Thus, we necessarily reject the request that we modify the Nebraska Supreme Court's decision in *Moore v. Eggers Consulting Co., supra*. In sum, we reject the claims made by Clear Channel in its cross-appeal.

*Burden of Proof.*

Sanford contends the district court erred in finding that she failed to sufficiently prove her damages because the court found that based on the evidence, the amount of commissions due could not be determined without engaging in speculation.

A plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages. *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006); *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003). Proof of damages to a mathematical certainty is not required, but a plaintiff's burden of offering evidence sufficient to prove damages cannot be sustained by evidence which is speculative and conjectural. *Shipler v. General Motors Corp., supra*. See *Pribil v. Koinzan, supra*. The proof is sufficient if the evidence is such as to allow the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness. *Shipler v. General Motors Corp., supra*; *Pribil v. Koinzan, supra*.

The question of whether the evidence of damages is reasonably certain is a question of law, and not a matter to be decided by the trier of fact. *Shipler v. General Motors Corp., supra*. See *Pribil v. Koinzan, supra*.

Sanford contends that her commissions can be calculated from the evidence adduced at trial. However, the evidence established

that sales executives were not paid a commission when a customer did not pay for the advertising aired. Further, if the station ran the wrong advertisement or ran the advertisement in the wrong rotation or at the wrong time, the client's bill was adjusted downward and the salesperson's commission was reduced, even though the mistake was not the salesperson's fault. There was no evidence adduced at trial establishing whether the advertising ran as projected, whether the customers were billed as projected, and whether they paid the projected amounts.

The evidence adduced by Sanford just establishes projected advertising and change orders. If any of these projections were altered in any way, Sanford's commissions would be affected. Thus, calculating Sanford's commissions based upon the evidence adduced would require speculation. Sanford's commissions cannot be calculated with a reasonable degree of specificity or exactness on the evidence adduced at trial. Therefore, the district court properly granted judgment in favor of Clear Channel.

Because of our determination that Sanford did not meet her burden of proof regarding damages, we need not consider Sanford's assignment of error that the district court erred in finding that she did not have orders on file with three certain clients on the date of her termination. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it). Even if the district court erred in its finding regarding the orders on file for three certain clients, Sanford did not adduce sufficient evidence to recover damages on these accounts.

## CONCLUSION

In sum, Clear Channel's policy requiring an employee to be employed with the station at the time an advertisement is run in order to be paid a commission, even though said policy is common within the industry, is void because it clearly conflicts with the definition of wages found in § 48-1229(4). However, the district court properly granted judgment in favor of Clear Channel because Sanford failed to meet her burden of proof regarding her damages. Therefore, the decision of the district court is affirmed.

AFFIRMED.

CASSEL, J., concurring.

I fully agree with the portion of the majority opinion holding that the district court did not err in finding that Sanford failed to prove damages or in granting judgment in favor of Clear Channel. For that reason, I do not agree that it is necessary to address Clear Channel's cross-appeal, and therefore, I do not join that portion of the majority opinion. " 'For [a] court's opinion to be binding as [a] precedent, there must have been [an] application of [the] judicial mind to [the] precise question necessary to [be] determine[d] in order to fix [the] parties' rights.' " *Yoder v. Nu-Enamel Corporation*, 140 Neb. 585, 589-90, 300 N.W. 840, 842 (1941), quoting *Mutual Benefit Health & Accident Ass'n v. Bowman*, 99 F.2d 856 (8th Cir. 1938). In other words, a case is not authority for any point not necessary to be passed on to decide the case. *Blue Cross and Blue Shield v. Dailey*, 268 Neb. 733, 687 N.W.2d 689 (2004). Because Sanford cannot prevail no matter how this court opines upon Clear Channel's cross-appeal, that question should be left for another day.