CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. GEORGE KELLOGG.*

FILED MARCH 3, 1898. No. 8169.

1. **Judges: INTEREST IN CASES.** A judge who presided at the trial of an action and rendered judgment therein is not, from that fact, disqualified by section 37, chapter 19, Compiled Statutes, to hear another suit brought to vacate the judgment in the former one.

2. ———: ———. A judge, to be "interested" within the meaning of said section and therefore disqualified, must be pecuniarily interested, or his interest in the litigation must be such that he will gain or lose something by the result.

*Rehearing allowed,

3. **Witnesses: EXCLUSION.** The practice of causing unexamined witnesses, except those called as experts, to be sequestered, so that they may not hear the testimony of the witness being examined, is a good one, as it tends to elicit the truth and promote the ends of justice.

4. ———: ———. But whether such witnesses shall be sequestered, in any case, is a matter resting in the discretion of the trial court, and, in the absence of a showing that the court abused its discretion to the prejudice of the complaining party, its action in the premises will not be disturbed.

5. **Communication to Jury.** Evidence examined, and *held* to sustain the finding of the district court that no improper communication had been made to the jury, while deliberating on their verdict in the first action, by the officer having them in charge.

ERROR from the district court of Phelps county. Tried below before BEALL, J. *Affirmed.*

*J. W. Deweese, F. E. Bishop, W. S. Morlan,* and *W. P. Hall,* for plaintiff in error.

*A. J. Shafer, S. A. Dravo,* and *Stewart & Munger, contra.*

RAGAN, C.

In the district court of Phelps county, in an action at law for damages, George Kellogg recovered a judgment against the Chicago, Burlington & Quincy Railroad Company. After the adjournment of the term of court at which such judgment was rendered the railway company brought this suit for a new trial of the law action. The court entered a judgment dismissing the action, and the railway company has filed here a petition in error to review this judgment.

1. The Hon. F. B. Beall was the judge who presided at the trial of the law case, and he also presided at the trial of the case at bar. When this case came on for trial counsel for the railway company objected to Judge Beall hearing it, claiming that he was interested and therefore disqualified from hearing this case. The railway company's objections were overruled and Judge Beall heard and determined the case at bar; and this action is the first

argument made here for a reversal of the judgment. Section 37, chapter 19, Compiled Statutes, provides: "A judge * * * is disqualified from acting as such * * * in any case wherein he is * * * interested." But the word "interested" found in this section of the statute probably means pecuniarily interested, or, at least, it means that a judge, to be disqualified from hearing a case, must be in such a situation with reference to it or the parties that he will gain or lose something by the result of the action on trial. It is not claimed that Judge Beall will gain or lose anything from the result of this action. It is not pretended that he has any pecuniary interest in the matter. . The argument seems to be that because he rendered the law judgment he would naturally be desirous that the same should be sustained and that therefore his inclination would be to defeat this suit. It can never be presumed that a judge will permit his desires or inclinations to control his decision in any manner, and that he tried the·case and rendered the judgment which it is sought to be vacated by this action does not render him interested and disqualified within the meaning of said section of the statute.

2. Before the court entered upon the trial of this action the railway company moved the court to sequester the witnesses by having them removed to some place where the unexamined witnesses could not hear the testimony of those who were on the stand. The overruling of this motion is the second assignment of error here. The practice is not regulated by statute in this state, except to the extent that magistrates hearing the preliminary examination of one charged with a criminal offense are by the statute invested with discretion to sequester the witnesses. (Criminal Code, sec. 301.) It was held in *Watts v. Holland*, 56 Tex. 54, that a party litigant had the right to cause the unexamined witness to be sequestered during the trial, and that the refusal of the court to make such an order on request was reversible error. In *Southey v. Nash*, 7 Car. & P. [Eng.] 632, Baron Alderson said:

"Either party has a right, at any moment, to require that the unexamined witnesses shall leave the court." In *Binfield v. State*, 15 Neb. 484, it was held that whether in a criminal case the unexamined witnesses should be sequestered was a matter resting within the discretion of the trial court; and the same rule was applied to a civil case in *Halbert v. Rosenbalm*, 49 Neb. 498. In *Johnson v. State*, 2 Ind. 652, the same ruling was made. In *Errissman v. Errissman*, 25 Ill. 136, it was held that the separation of witnesses during their examination was a matter of discretion for the trial court and that its exercise would not be reviewed. We think the practice of causing unexamined witnesses, except those called as experts, to be sequestered so that they may not hear the testimony of the witness being examined is a good one, as it tends to elicit the truth and promote the ends of justice; but we also think that the decided weight of authority, as well as the doctrine of this court, is that whether the witnesses shall be so sequestered is a matter resting in the discretion of the trial court, and, in the absence of a showing that the court abused its discretion in that respect, its ruling in the premises will not be made the ground for reversing its judgment.

3. The third argument is that the finding of the district court on which it based its judgment dismissing this action is not sustained by sufficient evidence. The petition alleged that after the jury trying the law case had been deliberating eighteen hours upon a verdict, the presiding judge, without the knowledge or consent of the railway company, instructed the deputy sheriff, who had the jury in charge, to say to them that he, the judge, was going home that afternoon and would adjourn court before going, and if the jury did not agree before he went home it would have to be locked up for probably a week; that the deputy sheriff communicated this statement of the presiding judge to the jury, and that the jury, for fear of being locked up for a great length of time, very soon thereafter agreed upon a verdict of $9,000, upon which

judgment was rendered. There were other averments in the petition as to the defense which the railway company had to the law action, and when the facts set forth in the petition here first came to its knowledge. It must be confessed that the jurors, after the time it is alleged the learned district judge instructed the deputy sheriff having them in charge to communicate with them, discussed among themselves the probability of their being locked up for a week or such a matter if they did not agree upon a verdict; but the evidence does not show that the deputy sheriff made to the jury the communication which the petition charges he did. He testified on the trial, and while admitting that the judge said to him, in effect, that he should tell the jury that he was going home in the afternoon, and if they did not agree upon a verdict they would be locked up for a week, that he did not make that communication to the jury, or any communication, on the subject, and that the judge, immediately after making this remark to him, called him back and told him to say nothing to the jury except to ask them if they had agreed upon a verdict. One or two of the jurymen testified that the deputy sheriff did say to the jury that if they did not agree upon a verdict before the judge went home they would have to be locked up for a week; but, in addition to the sheriff's denial of having made such a statement, most, if not all, of the other jurymen testified that they heard no such statement made; that they were in a position where they could have heard it had it been made. With the evidence in this condition we cannot say that it does not sustain the finding of the district court. It follows that the decree of the court denying a new trial of the law action is

AFFIRMED.