IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

MEIER MASONRY V. KRT CONSTR.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MEIER MASONRY, INC., APPELLANT,

V.

KRT CONSTRUCTION, INC., APPELLEE.

Filed February 9, 2016.    No. A-14-1061.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

W. Randall Paragas, of Paragas Law Offices, for appellant.

Damien J. Wright, of Welch Law Firm, P.C., for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Meier Masonry, Inc. (Meier) appeals from a jury verdict in the district court for Douglas County granted in favor of Meier for an amount of $14,245 on the basis of its unjust enrichment claim against KRT Construction, Inc. (KRT). On appeal, Meier contends that the district court erred in overruling Meier's motion to sequester and allowing KRT's expert witnesses to be present during the testimony of Meier's owner, Eugene Meier (Eugene); excluding from evidence a letter written on behalf of KRT to Meier on the basis of the letter being a settlement negotiation; and admitting two exhibits depicting KRT's expert witness' allegedly irrelevant construction bids. Meier concludes by asserting that the jury verdict should be vacated on the basis that any verdict for less than the full amount of $54,966.15 requested by Meier should be set aside as against the weight of the evidence. Because we find no error by the district court, we affirm.

- 1 -

## FACTUAL BACKGROUND

This matter arises from an informal agreement between Eugene, owner of Meier, and Kent Therkelsen (Kent), owner of KRT, that Meier would provide masonry construction services to KRT in the construction of KRT's new office headquarters building. Eugene is the father-in-law of Kent. The dispute centers on the amount and value of the materials and labor that Meier supplied in the construction of KRT's building, and the compensation owed to Meier as a result.

In 2008, KRT decided to construct its new headquarters in Omaha, Nebraska. Around May 2008, Kent requested that Eugene's company, Meier, provide masonry construction services for the building. Meier proceeded to complete the masonry work on the building, finishing around early October 2008. Both parties stipulated during trial that there was no contract or agreed upon price regarding these construction services. Further, Eugene admitted at trial that Meier did not provide a written estimate or bid to KRT prior to commencing its work, despite being asked by Kent for such a bid. Eugene claimed he was unable to provide a bid at that time because he had not yet been given a revised construction plan from KRT.

In late September 2008, around completion of the masonry work, Meier submitted a one-line item invoice to Kent for $154,000. Kent alleges that this was the first indication from Meier regarding the amount it intended to claim for the masonry work. In response to the invoice, Kent called Eugene, stating that he needed more information than was provided in the one-line item invoice. In mid-October of 2008, Meier sent a letter to KRT, entitled "Estimate." The date on the Estimate and Eugene's testimony suggests that it was drafted starting on July 11, 2008. Eugene testified that while the document was entitled "Estimate," it was meant to be the actual bill containing actual charges for the construction. The Estimate provides an itemized list of material and labor costs that went towards completion of the project. The Estimate stated a total cost of $154,966.15 for Meier's services.

Following his receipt of the Estimate, Kent instructed his employees to count the materials, specifically the "brick and block," contained in the completed building. Kent proceeded to create a spreadsheet, comparing the quantities given to him by his employees with the Estimate. As a result, Kent claims to have found that the quantities set forth in the Estimate were considerably higher than the quantities counted by his employees. Kent also compared the materials listed in the Estimate with invoices provided by Watkins Concrete and Nebraska Brick, the companies that respectively supplied the concrete block and red brick used in the construction. Kent claims that the quantities listed in the Estimate also exceed the material quantities listed in these invoices. Kent testified at trial that he asked Meier for clarification regarding the Estimate's numbers, but never received a clear response on how Meier was calculating his charges.

On March 4, 2009, Kent sent a letter to Meier explaining the discrepancies in the amount of materials. As stipulated to during trial, KRT had already paid $100,000 to Meier during the course of the construction. In the letter, Kent offered to pay Meier an additional $32,611.38 "in full accord and satisfaction of any outstanding dispute governing this matter." This number was based on KRT's calculation of the total cost of the masonry work, $132,611.38, minus the $100,000 that was already paid.

In response to KRT's refusal to pay the full amount of $154,966.15 contained in the Estimate, Meier filed this action against KRT on July 28, 2009 to collect the unpaid amount under the theory of unjust enrichment.

PROCEDURAL BACKGROUND

Following KRT's unsuccessful motion for summary judgment, a trial was held on October 20, 21, and 22, 2014 before the district court for Douglas County. Witnesses testifying for Meier included Eugene; William Morford, a mason and expert witness who testified regarding the fair and reasonable cost of the construction; and John LaRandeau, an assistant general manager at Watkins Concrete. LaRandeau was also called to testify by KRT. Witnesses testifying for KRT included Kent, John Woods, a former employee of KRT, Dean Simonson, and Albert Weis. Simonson and Weis are both masons and were called as rebuttal experts to testify regarding the fair and reasonable cost of Meier's masonry work.

Various exhibits were received into evidence. These exhibits included the Estimate, photos of the completed headquarters, building plans for the headquarters, copies of checks, invoices from Watkins Concrete and Nebraska Brick, construction bids presented by Simonson and Weis as experts, Meier's response to interrogatories, and additional documentation from Watkins Concrete regarding its transaction with Meier. KRT successfully objected to the admission of the March 4, 2009 letter sent by Kent to Meier on the basis of the letter being an inadmissible settlement offer as established by Neb. Rev. Stat. § 27-408.

During a break in Eugene's testimony, Meier made a motion to sequester KRT'S expert witnesses, Simonson and Weis. KRT objected to the motion. KRT argued that the presence of Simonson and Weis during Eugene's testimony was necessary as their purpose at trial was to testify as experts in rebuttal of Eugene's testimony. Further, KRT asserted that their presence was necessary because Eugene allegedly had not yet fully explained his methodology in billing KRT, and it was anticipated that such an explanation might come during his trial testimony. In response, Meier argued that Eugene had in fact provided a sufficient explanation of his methodology during discovery. After a lengthy side bar, the court denied the motion to sequester.

Eugene testified that the quantities of materials listed in the Estimate did not correspond to the actual amount of materials used in the construction. Rather, Eugene used a "build through" methodology in formulating the Estimate. Under this method, a contractor estimates and bills according to the amount of materials necessary to build the building if its doors and windows did not exist. Stated another way, the contractor bills as if he were going to "build through" the spaces taken up by doors and windows. This results in the estimated amount of materials likely exceeding the amount actually used in the construction. Eugene claimed that this billing method was necessary to account for the extra labor cost of installing doors and windows. As a result of applying the "build through" method, the total cost of $154,966.18 contained in the Estimate did not match up with the quantity of materials actually used in the building, but rather was meant to reflect the cost (amount) of the materials used in addition to a labor premium. Eugene testified that the Estimate was a true and accurate representation of the actual costs incurred by Meier in completing the building, along with profit figured in, utilizing the "build through" method.

In support of its assertion that the bill presented to KRT through the Estimate was reasonable, Meier called Morford, a mason, to testify as an expert witness. Following his

inspection of the building, Morford testified that Meier's billing contained in the Estimate was fair and reasonable.

In response, KRT called Simonson and Weis, both masons, to testify as rebuttal expert witnesses. Simonson testified that prior to trial and at KRT's request, he inspected the building and prepared a construction bid showing what he would charge for the masonry work done by Meier. Simonson calculated his construction bid by counting the materials, specifically the brick and block, used in the building and then multiplying these values by a per-brick/per-block labor rate. Simonson testified that his construction bid was fair and reasonable, and the bid was received into evidence over Meier's relevancy objection. This construction bid, for labor only, was in the sum of $55,000. Simonson also testified that he uses Watkins Concrete as a supplier and that Watkins' charges were fair and reasonable rates for materials.

On cross-examination, the discrepancies between Simonson's construction bid and the Estimate developed by Meier utilizing the "build through" method were explored. Simonson admitted that because his estimate was developed prior to trial, he did not have the opportunity to consider the premiums and extra charges under Meier's methodology, and that his construction bid may have been higher if he had been aware of them at the time he developed his estimate. Simonson testified that charging a labor premium is proper, but he increases his per-brick labor rate rather than utilizing a "build through" methodology to account for this cost.

Weis testified as KRT's second rebuttal expert witness. Weis, as the owner of Masonry Builders, Inc., was requested by KRT in 2008 to submit a labor-only bid for the masonry work necessary to construct the headquarters. Weis testified that he determined the necessary quantities of materials applicable to his bid by using the building plans, and then multiplied these quantities by a fair and reasonable labor rate. Weis' labor-only bid in the amount of $66,500 was received into evidence over Meier's foundation and relevancy objection. While Weis did not use the "build through" method, he agreed that some masons use that method.

On cross-examination, Weis testified to discrepancies between his construction bid and the Estimate developed by Meier. These discrepancies were similar to those highlighted in Simonson's construction bid. Specifically, Weis testified that his bid was based on the original plans for the building and did not take into account any problems or extra costs encountered by Meier during construction. Weis proceeded to testify that he would have charged more than his original bid if he had experienced similar challenges. Weis also testified generally that the "build through" method is a fair and reasonable way to bill.

The jury returned a verdict in favor of Meier for an amount of $14,245 on its unjust enrichment claim. It appears that the jury reached this number by first adding together the material costs contained in the Watkins Concrete invoices totaling approximately $37,800, an invoice for Ready Mix concrete in an amount of $9,945, and Weis' labor-only bid amount of $66,500. Then, the jury subtracted the sum of these values ($114,245) by the $100,000 that KRT already paid to Meier.

Regarding the Ready Mix invoice, KRT had acknowledged during trial that it had not paid for the concrete, but believed it only owed $4,180. However, the jury accepted Meier's assertion that the Ready Mix charge was actually for $9,945. Additionally, the jury chose to use Weis'

labor-only bid rather than Simonson's lower labor estimate of approximately $55,000 in its calculation.

Meier has timely appealed.

## ASSIGNMENTS OF ERROR

Meier assigns, restated, that the district court erred when it (1) overruled Meier's motion to sequester, allowing KRT's expert witnesses to be present during Eugene's testimony; (2) sustained KRT's objection to Meier offering into evidence a letter written on behalf of KRT to Meier on the basis of the letter being a settlement negotiation; and (3) admitted two irrelevant exhibits depicting KRT's expert witness' construction bids over Meier's objection. Additionally, Meier asserts that the jury's verdict in its favor for $14,245 should be vacated and set aside because any verdict for an amount less than the $54,966.15 requested by Meier is against the weight of the evidence.

## STANDARD OF REVIEW

The exclusion or sequestration of a witness is within the discretion of a trial court, and a denial of a sequestration motion will not be overturned absent evidence of prejudice to the moving party. See *State ex rel. NSBA v. Miller*, 258 Neb. 181, 602 N.W.2d 486 (1999).

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015). See, also, *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013); *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012). The admission of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012). A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

## ANALYSIS

### MOTION TO SEQUESTER

On appeal, Meier asserts that the district court erred when it overruled Meier's motion to sequester, allowing KRT's expert witnesses, Simonson and Weis, to be present during Eugene's testimony. Meier argues that there was no showing by KRT that Simonson and Weis' presence

during Eugene's testimony was essential to the presentation of KRT's case, and their presence gave KRT an unfair advantage, in violation of Neb. Rev. Stat. § 27-615.

Neb. Rev. Stat. § 27-615 provides, in relevant part, the following:

At the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and he may make the order on his own motion. This rule does not authorize exclusion of . . . (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

See, also, *In re Interest of Dennis W.*, 14 Neb. App. 827, 717 N.W.2d 488 (2006) (recognizing exception to exclusion rule for person whose presence is shown by a party to be essential to presentation of its cause).

The sequestration of witnesses has long been a part of Nebraska law, based on the policy that allowing an unexamined witness to hear the testimony of a current witness may be an obstacle to obtaining the truth and promoting justice. *State ex rel. Nebraska State Bar Ass'n v. Miller*, 258 Neb. 181, 195, 602 N.W.2d 486, 497 (1999) (citing *Chicago, B. & Q. R. Co. v. Kellogg*, 54 Neb. 138, 141, 74 N.W. 403, 404 (1898)). However, witnesses to be called as experts have been treated differently. An expert witness may be present in the courtroom, in contravention of a sequestration order, upon a showing that his or her presence is essential to the presentation of a party's case. *In re Interest of Dennis W.*, 14 Neb. App. 827, 717 N.W.2d 488 (2006) (citing State v. Jackson, 231 Neb. 207, 435 N.W.2d 893 (1989)).

Upon our review of the record, we find that KRT sufficiently demonstrated that the presence of Simonson and Weis during Eugene's testimony was essential to the presentation of KRT's case. During a lengthy side bar, KRT's counsel explained that Simonson and Weis needed to be present to hear Eugene's explanation of his methodology used in calculating the Estimate. The record supports that Eugene had not sufficiently explained his methodology prior to this point. Therefore, because KRT's entire defense against Meier's unjust enrichment claim depended on demonstrating that the Estimate was inaccurate, and the expertise of Simonson and Weis was anticipated to be the primary means to do so, the court did not abuse its discretion in denying the motion to sequester.

Even if the presence of Simonson and Weis was not sufficiently demonstrated by KRT to be essential to the presentation of its case, the testimony of these experts indicates that their presence was not actually prejudicial to Meier.

First, Eugene's testimony did not fully explain the calculations used in formulating Meier's Estimate beyond a general discussion of the "build through" method. Specifically, Eugene did not explain how to reconcile the quantities listed in the Estimate with the materials used in the construction; did not clarify how other costs, such as labor rates, influenced the Estimate; and did not otherwise explain how he applied the "build through" method to reach the numbers at issue. As a result, the experts who observed his testimony were in no better position to analyze or criticize Eugene's testimony or the Estimate than before.

Second, Simonson and Weis' testimony with regard to Eugene's billing methodology could have effectively weakened KRT's defense against Meier's unjust enrichment claim. Because Eugene did not fully explain his calculations, the direct and cross-examination testimony of

Simonson and Weis was limited to the estimates/construction bids they prepared prior to trial, which admittedly could have been low.

Simonson admitted on cross-examination that because his estimate was developed prior to trial, he did not have the opportunity to consider the premiums and extra charges under Meier's methodology, and that his construction bid may have been higher if he had been aware of them at the time he developed his estimate. Also, considering Simonson's explanation of the methodology he utilized, one could interpret his billing method as being similar to, or the same, as the "build through" method. Indeed, on appeal KRT asserts that Simonson utilized a per-brick labor rate methodology, while Meier contends that Simonson utilized the "build through" method.

Similarly, Weis testified on cross-examination that his bid was based on the original plans for the building and did not take into account any problems or extra costs that Eugene testified to having encountered during construction. Weis proceeded to testify that he would have charged more than his original bid if he had experienced similar challenges. Weis also testified generally that the "build through" method used by Meier is a fair and reasonable way to bill.

Thus, we find no prejudice resulting from the court's decision to overrule Meier's motion to sequester. The district court did not abuse its discretion in overruling Meier's motion to sequester.

Meier's first assignment of error is without merit.

EXCLUSION OF LETTER FROM EVIDENCE<br>AS OFFER TO COMPROMISE

On appeal, Meier asserts that the district court erred when it sustained KRT's objection to receipt of the March 4, 2009 letter from Kent to Meier on the basis that the letter was an inadmissible settlement offer as established by Neb. Rev. Stat. § 27-408.

Offers to compromise or settlement of a claim between parties is inadmissible. *Baker v. Blue Ridge Ins. Co.*, 215 Neb. 111, 113, 337 N.W.2d 411, 413 (1983). See, also, *Pogge v. Am. Family Mut. Ins. Co.*, 13 Neb. App. 63, 70, 688 N.W.2d 634, 640 (2004). This matter is controlled by Neb. Rev. Stat. § 27-408, which provides, in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

See, also, *Hike v. State Dep't of Rds.*, 288 Neb. 60, 74, 846 N.W.2d 205, 219 (2014) (evidence of conduct or statements made in compromise negotiations not admissible).

Upon our review of the record, we find that the district court did not abuse its discretion in excluding the letter from evidence. The letter contains the following pertinent language:

> This is the remaining balance we are agreeing to at this time. . . . We are not disputing any other charges for materials or labor at this time. We believe this to be in full accord and satisfaction of any outstanding dispute governing this matter. . . . This is our reconciliation of the amount due. . . . We are sorry for the dispute. If we had an estimate prior to work as requested this issue would not have happened.

This language, specifically the use of the phrase "full accord and satisfaction," is consistent with terminology used in settlement offers and negotiations.

Furthermore, viewing this language in the context of the circumstances leading up the letter, it is apparent that the letter was meant to serve as a settlement offer. There clearly was an active dispute regarding the amount owed by KRT to Meier for the masonry services at the time this letter was sent. KRT has disputed the amount of $154,966.15 requested by Meier from the beginning. In response to Meier's Estimate, KRT did its own calculations and estimates, determining that an amount of $132,611.38 was a more accurate total cost for the masonry work. This letter was then sent to Meier in an effort to resolve the dispute; wherein KRT offered to pay $32,611.38, taking into account the $100,000 that was already paid, as a compromise. The district court correctly ruled that this letter was an inadmissible settlement offer as established by Neb. Rev. Stat. § 27-408.

Meier's second assignment of error is without merit.

ADMISSIBILITY OF KRT'S EXPERT WITNESS'
CONSTRUCTION BIDS

On appeal, Meier contends that the district court erred in admitting Simonson and Weis' construction bids over Meier's objection. Meier argues that these bids were irrelevant. However, Meier failed to separately assign as error and argue the admission of these exhibits. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015). Therefore, this court will not address this argument on appeal.

JURY VERDICT SUPPORTED BY WEIGHT OF EVIDENCE

Lastly, Meier asserts that the jury's verdict in its favor for $14,245 should be vacated and set aside because any verdict for an amount less than the $54,966.15 requested is against the weight of the evidence.

In the absence of prejudicial error, the successful party, having sustained the burden and expense of trial, may keep the benefit of the verdict. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013). Further, such a verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Wulf, supra*.

Meier argues that the amount awarded was inadequate based on the evidence presented. The Nebraska Supreme Court has held that an award of damages may be set aside as inadequate when, and not unless, it is so inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. *Poppe v. Siefker*, 274 Neb. 1, 735 N.W.2d 784 (2007).

Upon our review of the record, we find that the jury's verdict is not clearly wrong, it is supported by sufficient evidence, and was not the result of passion, prejudice, mistake, or other injustice. Rather than accepting Meier's Estimate and awarding the remaining $54,966.15 requested therein, the jury weighed the evidence before it and found an award of $14,245 to be more appropriate. This amount is supported by the evidence of the material costs contained in the Watkins Concrete invoices (which was undisputed), the invoice for Ready Mix concrete, and Weis' labor-only bid. While the latter two items were in dispute, there was evidence in the record from which the jury could determine these amounts to be correct, which was in their province to do. These decisions demonstrate that the jury evaluated conflicting evidence, determining the credibility of the various testimony and estimates/bids presented at trial, as part of its overall weighing of the evidence.

Based on the evidence presented, the damages awarded to Meier under its unjust enrichment claim were adequate and not clearly wrong. This court will not disturb the jury's verdict on appeal.

Meier's fourth assignment of error is without merit.

## CONCLUSION

The district court did not err in denying Meier's motion to sequester, in excluding the compromise offer letter from evidence, and in admitting KRT's expert witness' construction bids. Furthermore, because there was competent evidence presented to the jury upon which it could reach its verdict, the verdict in favor of Meier limited to an amount of $14,245 was not clearly wrong. Accordingly, we affirm.

AFFIRMED.